THE HONORABLE LAUREN KING

1

2

3

4

5

6

7

8

9

**UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF WASHINGTON**
**AT SEATTLE**

10

NINTENDO OF AMERICA INC., a
Washington Corporation,

11

12            Plaintiff,

13      v.

14  JAMES C. WILLIAMS a/k/a ARCHBOX, an
individual,

15            Defendant.

16

17

CASE NO. 2:24-CV-00960-LK

**PLAINTIFF NINTENDO OF AMERICA INC.'S *EX PARTE* MOTION FOR LEAVE TO TAKE LIMITED EARLY DISCOVERY**

Note on Motion Calendar:
November 22, 2024

18         Plaintiff Nintendo of America Inc. ("Nintendo") respectfully requests leave to conduct

19  limited third-party discovery to (1) aid in preparation of its anticipated motion for default

20  judgment against Defendant James C. Williams a/k/a Archbox ("Defendant") and (2) ensure that

21  all appropriate defendants have been named in this lawsuit. Nintendo filed this lawsuit against

22  Defendant on June 28, 2024, asserting claims for copyright infringement, 17 U.S.C. § 501 *et seq.*,

23  and violation of the U.S. Copyright Act's anti-circumvention provisions, 17 U.S.C. § 1201.

24  Nintendo thereafter began diligent attempts to effect service upon Defendant, who (despite

25  apparent attempts at evasion) was finally served on August 13, 2024. Defendant has failed to

26  answer or respond to the Complaint in any manner, depriving Nintendo of the opportunity to take

27  discovery from the Defendant and requiring Nintendo to prepare a motion for default judgment.

28  *EX PARTE* MOTION FOR LEAVE TO TAKE
LIMITED EARLY DISCOVERY                              1
(Case No.2:24-CV-00960-LK)

LOWE GRAHAM JONES ᴾᴸᴸᶜ

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

Nintendo seeks leave to serve narrowly targeted subpoenas on a limited number of third-party Internet service providers who are likely to have information relevant both to Nintendo's anticipated motion for default judgment and to determining whether additional defendants should be named in this action and, if so, the identity of such additional defendants.

## I.     FACTUAL BACKGROUND

### A.     <u>Nintendo and the Nintendo Switch</u>

Nintendo develops and distributes the Nintendo Switch console, which is one of the most popular video game consoles of all time. Dkt. No. 1, ¶ 1. Nintendo also owns the U.S. copyrights and/or publishes in the United States (i.e., markets and distributes pursuant to exclusive license) award-winning video games that can be played only on the Nintendo Switch console. Many of these games – including titles such as *Mario Kart 8 Deluxe, The Legend of Zelda: Tears of the Kingdom, Super Mario Odyssey,* and *Animal Crossing: New Horizons* – belong to franchises that are household names and have each sold millions of copies. *Id.*

### B.     <u>Defendant and the Pirate Shops</u>

As alleged in the Complaint, the Defendant in this lawsuit has created, operates, oversees, promotes and assists others in creating, operating, and promoting a network of unauthorized online "shops" (nicknamed "freeshops") which offer to the public for download extensive libraries of pirated video games for the Nintendo Switch console. Defendant's unauthorized shops, which go by names such as "Jack-in-the-Shop," "Turtle in the Shop," and "LiberaShop" (collectively, the "Pirate Shops") have been among the most insidious drivers of video game piracy over the past few years. Dkt. No. 1, ¶ 3. Through his role in the Pirate Shops, including his active promotion and facilitation of their use, Defendant has provided to members of the public a nearly limitless supply of video games, in particular Nintendo Switch games, free for the taking. *Id.* To sustain the Pirate Shops Defendant has engaged in "crowdsourcing" schemes such as a scheme by which members of the public are solicited to "donate" pre-paid Nintendo eShop Gift Cards (used to purchase games to then copy and distribute) or copies of pirated Nintendo game files. *Id.*

*EX PARTE* MOTION FOR LEAVE TO TAKE
LIMITED EARLY DISCOVERY                    2
(Case No.2:24-CV-00960-LK)

LOWE GRAHAM JONES ᴘʟʟᴄ

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

Defendant's activities also include knowingly trafficking in malicious and unlawful software products that are designed to, and have no purpose other than to, circumvent Nintendo's technological measures that protect against the unauthorized access to and use of Nintendo Switch games and the Nintendo Switch console (the "Circumvention Software"). Dkt. No. 1, ¶ 4. Defendant has hosted websites and online "communities" dedicated to offering the Circumvention Software and to providing assistance to others seeking to use such software. *Id.* Defendant also has been an active and highly prominent member of the Reddit community r/SwitchPirates – self-described as a "community by pirates, for pirates." Via the "SwitchPirates" Reddit board, Defendant has touted and advertised his Pirate Shops and offered technical advice and encouragement about how to obtain and play pirated Nintendo Switch games and use the Circumvention Software. *Id.*

Defendant's scheme has caused Nintendo an indeterminate, but certainly substantial, amount of harm by distributing an unknown quantity of Nintendo games for free, offering and distributing the Circumvention Software to an unknown number of individuals, and creating and operating (and assisting in the creation and operation of) the Pirate Shops. Nintendo also has reason to believe that certain unnamed individuals, using anonymous usernames, have been working in concert with Defendant to unlawfully exploit Nintendo's valuable intellectual property and unlawfully circumvent its technological measures. Declaration of Marc Mayer ("Mayer Decl."), ¶¶ 1-5. Nintendo was unable to determine the true names and capacities of these individuals or entities prior to filing this lawsuit, but anticipated that such information would be disclosed by Defendant in the course of discovery. *Id.*, ¶ 5.

## C.    <u>Plaintiffs' Investigations to Date</u>

Nintendo conducted an extensive and diligent investigation before filing the Complaint. Mayer Decl., ¶¶ 3-5. That investigation identified Defendant as central to the operation and promotion of the Pirate Shops and involved extensive efforts to determine his name and location. *Id.*, ¶¶ 3-4; *see also* Dkt. Nos. 15-17. Defendants also learned of other anonymous online actors believed to be involved in the operation of the Pirate Shops, but who have remained anonymous

*EX PARTE* MOTION FOR LEAVE TO TAKE
LIMITED EARLY DISCOVERY
(Case No.2:24-CV-00960-LK)

3

LOWE GRAHAM JONES ᴘʟʟᴄ

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

despite continued investigation. Mayer Decl.., ¶¶ 5-8. Nintendo has determined that subpoenas to the entities named below are likely to yield information needed to determine (1) the parameters of the default judgment to be requested against Defendant, including as to damages (i.e., Nintendo's actual damages, Defendant's profits, and/or the amount of statutory damages) and the scope of injunctive relief, and (2) whether unnamed participants in Defendant's scheme should be added in an amended complaint. *See id.*, ¶¶ 9-18.

### D.    The Requested Discovery

Nintendo requests leave from this Court to issue narrowly focused subpoenas relevant to the aforementioned topics to the following Internet service providers: (1) Namecheap, Inc.; (2) Tucows, Inc.; (3) GoDaddy, LLC; (4) Cloudflare, Inc.; (5) GitHub, Inc.; (6) Discord, Inc.; (7) Google LLC; and (8) Reddit, Inc. These subpoenas will be limited in scope and seek information (1) confirming and identifying the account holders and the sources of any payments made, and (2) where applicable, aggregate traffic and access statistics for the Pirate Shops' websites and related online locations.

1.    **Namecheap, Inc.** is a domain name registrar. Defendant, and/or those working in concert with Defendant, used Namecheap to register multiple websites supporting the operation of the Pirate Shops. However, they did so using tools or services provided by Namecheap to conceal identifying information and maintain "privacy." Mayer Decl., ¶ 10. Namecheap is believed to have actual information concerning the owner(s) of these domain names, be it Defendant Williams or associated individuals appropriate to name in an amended complaint.

2.    **Tucows, Inc**. is another domain name registrar. Defendant, and/or those working in concert with Defendant, used Tucows to register at least one other website supporting the operation of the Pirate Shops, again using "privacy" services to conceal identifying information. Mayer Decl., ¶ 11. Tucows is believed to have actual information concerning the owner of these domain names, be it Defendant Williams or an associated individual appropriate to name in an amended complaint.

*EX PARTE* MOTION FOR LEAVE TO TAKE
LIMITED EARLY DISCOVERY                     4
(Case No.2:24-CV-00960-LK)

LOWE GRAHAM JONES ᴘʟʟᴄ

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

1    3. **GoDaddy, LLC** is a third domain name registrar. It is believed that an individual

2    working in concert with Defendant used GoDaddy to register a website linked to his GitHub

3    account, again using "privacy protection" services to conceal identifying information. Mayer

4    Decl., ¶ 12. GoDaddy is believed to have actual information concerning the owner of this domain

5    name, who may be appropriate to name in an amended complaint.

6    4. **Cloudflare, Inc.** is a company that offers security and content-delivery services to

7    websites, doing so in a manner that allows websites to obscure the identity and location of their

8    own servers. Multiple websites hosting and/or supporting the Pirate Shops used the Cloudflare

9    content distribution network to hide the actual IP addresses of their webhosting servers. Mayer

10   Decl., ¶ 13. Cloudflare is believed to have actual information concerning those servers and the

11   individuals using its services. Cloudflare is also expected to have information concerning the

12   volume of traffic to the Pirate Shops' websites and servers.

13   5. **GitHub, Inc.** is a website offering tools and hosting for software development and

14   collaboration. Mayer Decl., ¶ 14. As reflected in the Complaint, Plaintiffs identified a GitHub

15   account believed to be associated with Defendant and are aware of other accounts believed to be

16   associated with Defendant and others collaborating with him, including accounts maintained for

17   the purpose of developing and distributing circumvention software. *Id.*; *see also* Dkt. No. 1 at ¶¶ 7,

18   43-44. Accordingly, it is expected that GitHub will have account information reflecting the extent

19   of Defendant's activities, which may also identify other individuals appropriate to name in an

20   amended complaint. GitHub is also likely to have information reflecting the number of times anti-

21   circumvention software was distributed from the accounts at issue, which is relevant to Nintendo's

22   potential statutory damages award. *See* 17 U.S.C. § 1203(c)(3) (plaintiff may recover statutory

23   damages of "not less than $200 or more than $2,500 per act of circumvention, device, product,

24   component, offer, or performance of services, as the court considers just.").

25   6. **Discord, Inc.** operates a popular Internet "chat" platform allowing users to set up and

26   participate in individual communities, each of which may host thousands of users. Nintendo is

27   aware of multiple such communities, or "servers," associated with the Pirate Shops. Mayer Decl.,

28   *EX PARTE* MOTION FOR LEAVE TO TAKE
     LIMITED EARLY DISCOVERY                    5
     (Case No.2:24-CV-00960-LK)

LOWE GRAHAM JONES ᴾᴸᴸᶜ

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

1  ¶ 15. Discord will have actual information concerning the users of these communities and those

2  who established or controlled each community.

3      7. **Google LLC** operates popular Internet platforms such as Gmail and Google Drive, a

4  cloud storage service. Certain Pirate Shops employed Google Drive to store and distribute

5  infringing copies of Nintendo games. Mayer Decl., ¶ 16. Defendant used a Gmail address, and

6  other Gmail addresses related to the Pirate Shops appear to have been used either by Defendant or

7  others working in concert with him. Google is expected to have information concerning the users

8  of Google Drive in connection with the Pirate Shops, including those who initially established

9  and/or maintained repositories of infringing content. Google is also expected to have information

10  pertaining to the volume of traffic to cloud storage locations used to host and distribute copies of

11  Nintendo's copyrighted game files.

12      8. **Reddit, Inc.** Reddit is a social media platform where users, often using pseudonyms,

13  may post to different forums known as communities or "subreddits." Mayer Decl., ¶ 17. As

14  alleged in the Complaint, under the name "Archbox," Defendant was a primary moderator of the

15  SwitchPirates community, which boasted more than 190,000 members. *Id.*; *see* Dkt. No. 1, ¶ 4.

16  Nintendo has reason to believe that other accounts active in the SwitchPirates community may

17  also have been controlled by Defendant, or else reflect other individuals who have worked

18  alongside Defendant. *Id.* Reddit is therefore likely to be in possession of information that will aid

19  in preparation of Nintendo's anticipated motion for a default judgment against Defendant, and that

20  will assist in identifying any other individuals appropriate to name in an amended complaint.

21  Reddit is also expected to have information pertaining to the growth of, and traffic to, the

22  SwitchPirates subreddit during the relevant period of Defendant's activities.

23  **II.    NINTENDO SHOULD BE GRANTED LEAVE TO TAKE LIMITED DISCOVERY**

24      District courts have broad discretion in scheduling discovery, including broad discretion to

25  order expedited discovery prior to a Rule 26 conference. *Hallet v. Morgan*, 296 F.3d 732, 751 (9th

26  Cir. 2002). Federal Rule of Civil Procedure 26(d)(1) authorizes a court to permit discovery before

27

28  *EX PARTE* MOTION FOR LEAVE TO TAKE
LIMITED EARLY DISCOVERY          6
(Case No.2:24-CV-00960-LK)

LOWE GRAHAM JONES ᴾᴸᴸᶜ

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

1   the Rule 26(f) conference upon a showing of "good cause" for the party's need for expedited

2   discovery.

3          Good cause for expedited discovery "exists 'where the need for expedited discovery, in

4   consideration of the administration of justice, outweighs the prejudice to the responding party,'"

5   *Amazon.com, Inc. v. Individuals & Entities Doing Bus. as Certain Amazon Selling Accts.*, 2023

6   WL 3902695, at *1 (W.D. Wash. May 19, 2023) (*quoting Microsoft Corp. v. Mai*, No. C09-

7   0474RAJ, 2009 WL 1393750, at *5 (W.D. Wash. May 15, 2009)). Accordingly, "[c]ourts

8   routinely allow early discovery where it will 'substantially contribute to moving th[e] case

9   forward' and is 'narrowly tailored' for that purpose." *Id.* (quoting *Semitool, Inc. v. Tokyo Electron*

10  *America, Inc.*, 208 F.R.D. 273, 276 (N.D. Cal. April 19, 2002)). "Relevant factors in assessing

11  good cause are the requesting party's diligence, its intent in seeking the requested information, and

12  whether the opposing party will be prejudiced if the Court grants the motion." *Id.* (citing *Renaud*

13  *v. Gillick*, No. C06-1304RSL, 2007 WL 98465, at *3 (W.D. Wash. Jan. 8, 2007)).

14         Here, good cause exists as to the requested discovery both (1) to inform the scope of the

15  default judgment to be requested against Defendant, including damages and the scope of a

16  permanent injunction, and (2) to identify any currently unnamed participants in Defendant's

17  scheme. As such the court should grant Nintendo's application.

18         A.    **The Discovery Sought Will Be Narrowly Tailored and Will Substantially**

19               **Contribute to Moving the Case Forward**

20         The narrowness of the requested discovery militates in favor of granting the proposed

21  discovery. Nintendo's intended requests are narrowly tailored and no broader than necessary to

22  ascertain the scope and extent of Defendant's scheme, the necessary contours of a default

23  judgment and permanent injunction, and any other individuals involved to be properly named in

24  this action. Because the discovery sought will seek identifying information that Internet service

25  providers required or collected to use their services, it is likely to reveal the identities of the

26  individuals or entities primarily responsible for the Pirate Shops, including Defendant and others

27

28  *EX PARTE* MOTION FOR LEAVE TO TAKE
    LIMITED EARLY DISCOVERY                        7
    (Case No.2:24-CV-00960-LK)

1    acting in concert with him whose identities could have been elicited in this litigation if not for

2    Defendant's default.

3         This requested discovery will substantially contribute to moving the case forward. This

4    discovery is essential because Defendant and those who have worked in concert with him operated

5    in secret, under aliases, in connection with multiple Pirate Shops and associated groups. Mayer

6    Decl., ¶¶ 4-6, 8-17. Moreover, Defendant has defaulted, rendering Nintendo unable to take

7    discovery without leave of court. Without discovery, Nintendo lacks a complete picture of the full

8    range of Defendant's infringing activities and related offenses – relevant to damages and the

9    proper scope of a permanent injunction – as well as knowledge of associated individuals who may

10   be appropriate to name in an amended complaint. *See Kraho GmbH v. Overlord Ltd*., No. CV 19-

11   04050-AB (KSX), 2019 WL 8064249, at *2 (C.D. Cal. Dec. 20, 2019) (finding good cause where

12   "Defendant has failed to respond to Plaintiff's complaint, so Plaintiff has been prevented from

13   participating in a Rule 26(f) conference and from obtaining discovery from Defendant as to the

14   scope of its unlawful activities and the revenue generated from those activities") (collecting cases).

15   Finally, there can be no doubt that Nintendo's claims have merit: as detailed in the Complaint –

16   and as Defendant has not bothered to contest – Defendant's scheme involves the large-scale piracy

17   of hundreds, if not thousands, of copyrighted Nintendo game files. *See, e.g.,* Dkt. No. 1, ¶¶ 5, 40,

18   104.

19        **B.    Nintendo Has Been Diligent in Seeking the Information Sought**

20        Nintendo has been diligent in trying to discover the information it seeks and is acting in

21   good faith in making this application. To prepare the Complaint and bring this action, Nintendo

22   and its counsel expended significant time and resources to investigate Defendant's identity and

23   online activities, as well as those of other anonymous individuals who worked in concert with

24   Defendant. Mayer Decl., ¶¶ 3-8; *see also* Dkt. Nos. 15-17. Nintendo has exhausted its ability to

25   discover further information on its own, and Defendant's failure to appear impedes Nintendo's

26   ability to propound routine discovery either to him or to third parties on matters relevant to the

27   scope of a requested default judgment and to determine whether other defendants are appropriately

28   *EX PARTE* MOTION FOR LEAVE TO TAKE
     LIMITED EARLY DISCOVERY                        8
     (Case No.2:24-CV-00960-LK)

1   named in this action. "Good cause exists where a plaintiff has exhausted its means to identify the

2   defendant through publicly-available information and has no other way to identify the bad actors

3   involved in the scheme." *Amazon.com, Inc. v. Yong*, No. 21-170RSM, 2021 WL 1237863, at *2

4   (W.D. Wash. Apr. 2, 2021) (citing *Facebook, Inc. v. Various, Inc.*, 2011 WL 2437433, at *3 (N.D.

5   Cal. 2011)).

6       **C.      Nintendo's Intent Is Proper**

7           Nintendo's intent in seeking the requested discovery is to obtain highly relevant

8   information from third parties in light of Defendant's default, both to ensure appropriate relief

9   through a default judgment and to allow naming of any additional parties. *See* Mayer Decl., ¶¶ 8-

10  9, 18. These are valid purposes for seeking expedited discovery.

11          Courts in this District and elsewhere have granted similar discovery into the scope of a

12  defaulting defendant's offenses to accord proper relief. *See Kraho GmbH*, 2019 WL 8064249, at

13  *2 (collecting cases); *Adobe Sys. Inc. v. Bunhey*, 2013 WL 12140304, at *2 (C.D. Cal. Oct. 29,

14  2013) (allowing third-party discovery "sought … in an effort to discover the full extent of

15  Defendants' counterfeit dealings to support a Motion for Entry of Default Judgment and a request

16  for damages"); *Microsoft Corp. v. Baro*, No. C07-1953RAJ, 2008 WL 11350072, at *1 (W.D.

17  Wash. Oct. 20, 2008) (granting motion for default judgment after plaintiff was allowed third-party

18  discovery); *see also id.,* Dkt. 14 (May 21, 2008) (seeking "limited discovery … for the purpose

19  determining the scope of Defendant's infringing activities and proof of sales," noting the "the size

20  of defendant's operation" as one of several factors to be considered upon election of statutory

21  damages) (citing *Reebok Intern. Ltd v. Jemmett*, 1990 WL 261362, at *4 (S.D. Cal. 1990)).

22          Courts also routinely allow early discovery to identify unknown co-conspirators. "[W]here

23  the identity of alleged defendants [is] not [] known prior to the filing of a complaint[,] the plaintiff

24  should be given an opportunity through discovery to identify the unknown defendants, unless it is

25  clear that discovery would not uncover the identities, or that the complaint would be dismissed on

26  other grounds[.]" *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980); *see also Valentin v.

27  Dinkins*, 121 F.3d 72, 75-76 (2d Cir. 1997); *Munz v. Parr*, 758 F.2d 1254, 1257 (8th Cir. 1985);

28  *EX PARTE* MOTION FOR LEAVE TO TAKE
    LIMITED EARLY DISCOVERY                                      9
    (Case No.2:24-CV-00960-LK)

1   *Maclin v. Paulson*, 627 F.2d 83, 87 (7th Cir. 1980); *Amazon.com, Inc. v. Wang Weiyuan*, No.

2   2:23-CV-00931-RSM, 2024 WL 992609 at *2 (W.D. Wash. Feb. 22, 2024) (collecting cases).

3          Here, the Complaint named a single known defendant, while noting that others participated

4   in his scheme. *See, e.g.,* Dkt. No. 1, ¶ 30 (reprinting message referring to missingdumps.org

5   "team"), *id.,* ¶ 32 (Defendant understood to be "***one of*** jits' admins") (emphasis added). Allowing

6   discovery is especially appropriate where individuals "pseudonymously or anonymously" commit

7   tortious acts over the Internet. *UMG Recordings, Inc. v. Doe*, 2008 WL 4104214, at *4 (N.D. Cal.

8   Sept. 3, 2008) ("In Internet infringement cases, courts routinely find good cause exists to issue a

9   Rule 45 subpoena to discover a Doe defendant's identity, prior to a Rule 26(f) conference, where a

10  plaintiff makes a prima facie showing of infringement, and there is no other way to identify the

11  Doe defendant, and there is a risk an ISP will destroy its logs prior to the conference.") (citation

12  omitted); *see also DCD Programs, Ltd. v. Leighton, 8*33 F.2d 183, 187 (9th Cir. 1987) (where suit

13  was "still in its early stages," it was appropriate to name a new defendant in an amended complaint

14  where plaintiff "waited until they had sufficient evidence" and there was "no evidence in the

15  record which would indicate a wrongful motive").

16          **D.    Defendant Will Not Be Prejudiced By the Discovery Sought**

17          The burden on the third parties to comply with the intended subpoenas is minimal. Indeed,

18  the discovery sought would have been propounded anyway had Defendant not defaulted and a

19  Rule 26 conference taken place. Moreover, the proposed subpoenas will place no burden on

20  Defendant at all, who, by defaulting, is avoiding compliance with any discovery obligations

21  himself. *See Amazon.com, Inc. v. Yong*, No. 21-170RSM, 2021 WL 1237863, at *3 (W.D. Wash.

22  Apr. 2, 2021) (noting that "courts recognize [discovery directed at non-parties] as not impos[ing] a

23  significant burden upon defendants.") (internal quotations and citation omitted). Any prejudice to

24  defendant or others is minimal and is outweighed by the need for discovery sought.

25  **III.    CONCLUSION**

26          For the reasons above, Nintendo respectfully requests that the Court enter the proposed

27  order submitted herewith, authorizing it to conduct limited third-party discovery to aid in

28  *EX PARTE* MOTION FOR LEAVE TO TAKE
    LIMITED EARLY DISCOVERY                          10
    (Case No.2:24-CV-00960-LK)

LOWE GRAHAM JONES PLLC

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

preparation of Nintendo's anticipated motion for a default judgment and to identify any additional parties who should be named as defendants in this action.

DATED: November 22, 2024

LOWE GRAHAM JONES PLLC

By:/s/ *Mark P. Walters*
_____

Mark P. Walters
LOWE GRAHAM JONES PLLC
1325 Fourth Avenue, Suite 1130
Seattle, WA 98101
walters@lowegrahamjones.com
Tel: 206-381-3300

Marc E. Mayer (admitted *pro hac vice*)
Mark C. Humphrey (admitted *pro hac vice*)
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA 90067
Tel.    (310) 312-2000
Email: mem@msk.com
          mxh@msk.com

Attorneys for Plaintiff Nintendo of America Inc.

*EX PARTE* MOTION FOR LEAVE TO TAKE
LIMITED EARLY DISCOVERY                    11
(Case No.2:24-CV-00960-LK)

LOWE GRAHAM JONES PLLC
1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301