**The Honorable Lauren King**

# UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF WASHINGTON
### AT SEATTLE

| | |
|---|---|
| NINTENDO OF AMERICA INC., a Washington Corporation,<br><br>        Plaintiff,<br><br>   v.<br><br>JAMES C. WILLIAMS a/k/a ARCHBOX, an individual,<br><br>        Defendant. | CASE NO. 2:24-CV-00960-LK<br><br>**MOTION OF NINTENDO OF AMERICA INC. FOR ENTRY OF DEFAULT JUDGMENT BY THE COURT**<br><br>Notice on Motion Calendar: October 24, 2025 |

**MOTION FOR DEFAULT JUDGMENT**
**Case No.2:24-CV-00960-LK**                    i

LOWE GRAHAM JONES ᴾᴸᴸᶜ
1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

# <u>TABLE OF CONTENTS</u>

<u>Page</u>

I.    INTRODUCTION .................................................................................................. 1

II.    FACTUAL BACKGROUND ................................................................................ 2

    A.    Nintendo and the Nintendo Switch Console. ........................................... 2

    B.    Defendant's Unlawful Activities ............................................................... 3

    C.    NOA's Contacts with Defendant............................................................... 7

    D.    Procedural History.................................................................................... 8

III.    DEFAULT JUDGMENT SHOULD BE ENTERED AGAINST WILLIAMS. ................. 9

    A.    This Court Has Jurisdiction. .................................................................... 10

        1.    Subject Matter Jurisdiction........................................................ 10

        2.    Personal Jurisdiction ................................................................. 10

    B.    The *Eitel* Factors Weight in Favor of Default Judgment. .................................. 11

        1.    Possibility of Prejudice.............................................................. 11

        2.    Merits of Claim and Sufficiency of Complaint ......................... 12

    C.    Amount at Stake ..................................................................................... 18

    D.    Possibility of Dispute Regarding Material Fact ..................................... 18

    E.    Possibility of Excusable Neglect............................................................ 19

    F.    Policy for Deciding Case on the Merits ................................................. 19

IV.    PLAINTIFF IS ENTITLED TO A PERMANENT INJUNCTION AND MONETARY DAMAGES IN THE AMOUNT OF $4,500,000. ......................................................... 20

    A.    NOA Is Entitled to a Permanent Injunction ......................................... 20

    B.    NOA Is Entitled to Damages in the Amount of $4,500,000 ................. 21

V.    CONCLUSION ................................................................................................. 23

**MOTION FOR DEFAULT JUDGMENT**
**Case No.2:24-CV-00960-LK**

i

LOWE GRAHAM JONES ᴾᴸᴸᶜ

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

1

**TABLE OF AUTHORITIES**

2

**Page(s)**

3

**CASES**

4

*A&M Records Inc. v. Napster Inc.*,
  239 F.3d 1003 (9th Cir. 2001)................................................................................. 12

5

6

*A&M Records, Inc. v. Napster, Inc.*,
  239 F.3d 1004 (9th Cir. 2001)........................................................................... 12, 13

7

8

*AirDoctor, LLC v. Xiamen Qichuang Trade Co.*,
  134 F.4th 552 (9th Cir. 2025) (Berzon, J., concurring)........................................... 9

9

*Amazon Content Servs. LLC v. Kiss Library*,
  2021 WL 5998412 (W.D. Wash. Dec. 17, 2021)........................................... 11, 23

10

11

*Amazon.com, Inc. v. Dong*,
  2024 WL 775900 (W.D. Wash. Feb. 26, 2024) ..................................................... 20

12

13

*Apple Computer, Inc. v. Franklin Computer Corp.*,
  714 F.2d 1240 (3d Cir. 1983)................................................................................. 21

14

*Arista Records LLC v. Lime Group LLC*,
  784 F. Supp. 2d 398 (S.D.N.Y. 2011).................................................................... 13

15

16

*Arista Records LLC v. Usenet.com, Inc.*,
  633 F. Supp. 2d 124 (S.D.N.Y. 2009).................................................................... 13

17

18

*Bekins v. Zheleznyak*,
  2018 WL 1174997 (C.D. Cal. Mar. 5, 2018) ........................................................ 12

19

*Blizzard Entm't Inc. v. Ceiling Fan Software LLC*,
  28 F. Supp. 3d 1006 (C.D. Cal. 2013).................................................................... 16

20

21

*Blizzard Entm't, Inc. v. Reeves*,
  2010 WL 4054095 (C.D. Cal. Aug. 10, 2010) ........................................................ 9

22

23

*Briskin v. Shopify, Inc.*,
  135 F.4th 739 (9th Cir. 2025) (en banc)................................................................ 11

24

*Bungie, Inc. v. Bansal*,
  2023 WL 3309496 (W.D. Wash. May 8, 2023) ........................................ 15, 16, 18

25

26

*Davidson & Assocs., Inc. v. Internet Gateway*,
  334 F. Supp. 2d 1164 (E.D. Mo. 2004) ................................................................. 16

27

*Derek Andrew, Inc. v. Poof Apparel Corp.*,
  528 F.3d 696 (9th Cir. 2008)................................................................................. 12

28

**MOTION FOR DEFAULT JUDGMENT**
**Case No.2:24-CV-00960-LK**                                                    ii

LOWE GRAHAM JONES ᴘʟʟᴄ

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

1

**TABLE OF AUTHORITIES**
(continued)

2

**Page(s)**

3

*Doggie Dental, Inc. v. Shahid*,
     2021 WL 4583649 (N.D. Cal. Aug. 2, 2021)......................................................... 22, 23

*eBay Inc. v. MercExchange*,
     L.L.C., 547 U.S. 388 (2006)............................................................................... 20

*Eitel v. McCool*,
     782 F.2d 1470 (9th Cir. 1986)...................................... 9, 10, 11, 12, 18, 19

*Epstein v. Wilder*,
     1985 WL 1354 (N.D. Ill. May 15, 1985) ............................................................. 11

*Eve Nevada, LLC v. Derbyshire*,
     2022 WL 279030 (W.D. Wash. Jan. 31, 2022) ................................................... 11

*Glud & Marstrand A/S v. Viva Magnetics Ltd (Hong Kong)*,
     2012 WL 12878686 (W.D. Wash. Aug. 7, 2012) ............................................... 10

*Henry v. Sneiders*,
     490 F.2d 315 (9th Cir. 1974).............................................................................. 10

*JBR, Inc. v. Cafe Don Paco, Inc.*,
     2014 WL 5034640 (N.D. Cal. Aug. 25, 2014) ................................................... 19

*Love v. iCustom Clothing LLC*,
     2021 WL 3291885 (N.D. Cal. Aug. 2, 2021) ....................................................... 9

*Marcelos v. Dominguez*,
     2009 WL 230033 (N.D. Cal. Jan. 29, 2009) ..................................................... 18

*Mendoza v. Microsoft Inc.*,
     2014 WL 4540225 (W.D. Wash. Sept. 11, 2014) .............................................. 16

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
     518 F. Supp. 2d 1197 (C.D. Cal 2007)........................................................... 20, 21

*Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*,
     545 U.S. 913 (2005) .......................................................................................... 13

*Microsoft Corp. v. Coppola*,
     2007 U.S. Dist. LEXIS 40515 (N.D. Cal. May 24, 2007) ................................. 20

*PepsiCo, Inc. v. Cal. Sec. Cans*,
     238 F. Supp. 2d 1172 (C.D. Cal. 2002).......................................................... 12, 18

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**MOTION FOR DEFAULT JUDGMENT**
**Case No.2:24-CV-00960-LK**                                 iii

LOWE GRAHAM JONES ᴾᴸᴸᶜ

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F. 206.381.3301

1

## TABLE OF AUTHORITIES
(continued)

2

Page(s)

3

*Perfect 10, Inc. v. Talisman Comm'ns Inc.*,
    2000 WL 364813 (C.D. Cal. March 27, 2000) ...................................... 23

*Synopsys, Inc. v. InnoGrit, Corp*,
    2019 WL 4848387 (N.D. Cal. Oct. 1, 2019) ...................................... 14

*Taylor Corp. v. Four Seasons Greetings, LLC*,
    403 F.3d 958 (8th Cir. 2005) ...................................... 21

*TeleVideo Sys., Inc. v. Heidenthal*,
    826 F.2d 915 (9th Cir. 1987) ...................................... 9

*Unicolors, Inc. v. Urban Outfitters, Inc.*,
    853 F.3d 980 (9th Cir. 2017) ...................................... 22

*Visoneering Constr. v. U.S. Fidelity & Guar.*,
    661 F.2d 119 (9th Cir. 1981) ...................................... 9

*W. Reserve Life Assur. Co. v. Canul*,
    2012 WL 844589 (E.D. Cal. Mar. 12, 2012) ...................................... 19

*Walt Disney Co. v. Powell*,
    897 F.2d 565 (D.C. Cir. 1990) ...................................... 20

*Warner Bros. Ent. Inc. v. Caridi*,
    346 F. Supp. 2d 1068 (C.D. Cal. 2004) ...................................... 19, 23

*World Access, Inc. v. Midwest Underground Tech., Inc.*,
    2016 WL 5796873 (E.D. Wash. Sept. 30, 2016) ...................................... 17

### STATUTES

17 U.S.C.
    § 106 ...................................... 12
    § 106(1) ...................................... 12
    § 106(2) ...................................... 12
    § 106(3) ...................................... 12
    § 501(a) ...................................... 22, 23
    § 502(a) ...................................... 20
    § 504(a) ...................................... 22
    § 504(c) ...................................... 22
    § 504(c)(1) ...................................... 23
    § 504(c)(2) ...................................... 22, 23
    § 505 ...................................... 23
    § 1201 ...................................... 8, 18
    § 1201(a)(1) ...................................... 14

MOTION FOR DEFAULT JUDGMENT
Case No.2:24-CV-00960-LK

iv

LOWE GRAHAM JONES PLLC
1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F. 206.381.3301

# TABLE OF AUTHORITIES
(continued)

**Page(s)**

§ 1201(a)(2)................................................................................................... 14, 15
§ 1201(b) ......................................................................................................... 14
§ 1201(b)(1)..................................................................................................... 15
§ 1203(b)(1)..................................................................................................... 20

28 U.S.C.
§ 1331 .............................................................................................................. 10
§ 1338(a) .......................................................................................................... 10
§ 1367 .............................................................................................................. 10

## OTHER AUTHORITIES

Wright & Miller, 5B Fed. Prac. & Proc. Civ. § 1344 (4th ed.) .................................... 11

Fed. R. Civ. P.
12(h)(1)............................................................................................................ 11
55(a) ............................................................................................................... 20
55(b)(2)............................................................................................................ 9

Local Rule
55 .............................................................................................................. 9, 19

4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 14.04[A] (2002)................... 23

LOWE GRAHAM JONES PLLC

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

## I.  INTRODUCTION

Plaintiff Nintendo of America Inc. ("NOA") – along with its parent, Nintendo Co., Ltd. (collectively, "Nintendo") – develops and distributes the celebrated Nintendo Switch video game console, and markets and distributes in the United States immensely popular, award-winning games that can be played only on the Nintendo Switch console.  Complaint (Dkt. 1), ¶1.  This action concerns an individual, Defendant James C. Williams a/k/a "Archbox" ("Williams" or "Defendant"), who has facilitated a network of unauthorized online "shops" (nicknamed "freeshops") that have offered to the public extensive libraries of pirated Nintendo Switch games for download (the "Pirate Shops").  *Id.,* ¶2.

Williams not only copied and distributed Nintendo game files without authorization; he actively promoted their distribution and copying to thousands of others across a variety of websites and online "communities," and knowingly trafficked in unlawful software products aimed at circumventing Nintendo's technological measures protecting against unauthorized access to and use of Nintendo Switch games and the Nintendo Switch console itself (the "Circumvention Software").  *Id.,* ¶¶3-4.  These activities have substantially damaged NOA's overall business and intellectual property rights, as well as the business and intellectual property rights of NOA's development and publishing partners, and further has caused harm to the many artists, game designers, programmers and others whose livelihoods depend upon the sale of authorized Nintendo products.  *Id.*, ¶¶5-6, 8.

Williams was served on August 13, 2024, and the Court has reviewed materials documenting the propriety of this service and the steps taken by Nintendo to ensure Williams was the proper Defendant.  Dkt. 9, 12-17.  Default was thereafter entered by the Clerk on November 8, 2024.  Dkt. 18.  Williams has chosen not to respond to the Complaint, though he retained counsel to make a purported "limited appearance" for the purpose of intervening in a third-party subpoena served in anticipation of the present motion.  Dkt. 22; *see also* Declaration of James D. Berkley ("Berkley Decl."), ¶¶1, 10-13 & Exs. 6-7.  In other words, the record reflects that Williams is fully aware of this action, but has allowed default to be entered and has taken no action to cure or

**MOTION FOR DEFAULT JUDGMENT**
**Case No.2:24-CV-00960-LK**

1

contest it.  As set forth below, default judgment is warranted, and the monetary and non-monetary relief sought herein is wholly justified.

## II.    FACTUAL BACKGROUND

### A.    Nintendo and the Nintendo Switch Console.

Along with its Japan-based parent company, Plaintiff NOA, based in Redmond, Washington, develops and distributes the Nintendo Switch, which is one of the most popular video game consoles of all time.  Compl., ¶¶1, 9.  NOA also owns the U.S. copyrights and/or publishes in the United States under exclusive license many highly popular and award-winning video games that can be played only on the Nintendo Switch console, including *Mario Kart 8 Deluxe*, *The Legend of Zelda: Tears of the Kingdom*, *Super Mario Odyssey*, and *Animal Crossing: New Horizons* (collectively, the "Nintendo Switch Games").  *Id.*

The popularity of Nintendo's video games and consoles has made Nintendo an ongoing target of intellectual property thieves and hackers.  *Id.* at ¶19.  These individuals or entities benefit from Nintendo's innovation and investment by making unauthorized copies of Nintendo video games, or by developing methods by which others can copy and distribute unauthorized copies of Nintendo video games or play such copies on Nintendo consoles, including by offering such materials through unauthorized online storefronts or "shops," such as the Pirate Shops.  *Id.*, ¶¶19, 29-30; *see also id.*, ¶¶32-45.

Nintendo has taken many steps and expended significant resources to halt or stem such illegal copying, marketing, sale, and distribution of Nintendo's video games.  *Id.* at ¶20.  These include sophisticated technological protection measures devised to protect and control access to Nintendo's consoles and to its copyrighted video games, incorporated into both the Nintendo Switch consoles themselves ("Console TPMs") and Nintendo Switch video game software products ("Game TPMs").  *Id.* at ¶21.  An example of Console TPMs includes use of a series of authentication checks to ensure that only Nintendo's authentic operating system is run on Nintendo Switch consoles.  *Id.*, ¶22.  Likewise, an example of Game TPMs includes use of complex encryption and decryption methods to ensure that only authorized game cartridges and software can be played on Nintendo Switch consoles, and cannot be copied and disseminated.  *Id.*,

**MOTION FOR DEFAULT JUDGMENT**
**Case No.2:24-CV-00960-LK**

2

¶23.  Due to such measures, Nintendo Switch users who wish to play or make unauthorized copies of Nintendo Switch games must bypass and/or circumvent at least two layers of protection, a process requiring circumvention of both Nintendo hardware and software.  *Id.* at ¶¶22-24.

Nintendo also requires users of the Nintendo Switch console, or those who wish to purchase or download digital games and game files from Nintendo's authorized online eShop, to consent to separate "end-user license agreements," or "EULAs," which limit by contract the actions a user may take with the Nintendo Switch console and with Nintendo software.  *See id.*at ¶¶25-28.  These EULA-based restrictions prohibit actions that "defeat, tamper with, or circumvent … the functions or protections of the [Nintendo Switch] Console" and limit the users' use of Nintendo game software to "personal and non-commercial use" only. *Id; see also* Berkley Decl., ¶¶2-6 & Exs. 1-4.  By adhering to these EULAs, individuals consent to jurisdiction in the State of Washington for resolution of claims involving violation of Nintendo's intellectual property rights. Compl., ¶13; *see, e.g.,* Berkley Decl., Ex. 1 at Section 9(A); Ex. 3 at Section 18.

**B.    Defendant's Unlawful Activities**

Defendant Williams resides in Surprise, Arizona, and is a self-proclaimed Nintendo "pirate" who long has been involved in creating, operating, supporting, and promoting a network of Pirate Shops which have offered to the public extensive libraries of pirated Nintendo Switch games for free download.  Compl., ¶¶2-6, 10, 29-40; *see also* Berkley Decl., ¶¶7-9, 14-26 & Exs. 5, 8-20; Declaration of Nintendo of America Inc. ("NOA Decl."), ¶¶1-14 & Exs. 24-33.  Since 2019, Williams has been either directly or indirectly the owner, manager, operator, creator, administrator, supplier, and/or overseer of several online Pirate Shops, and has worked to actively promote these Pirate Shops to communities consisting of many thousands of individuals.  *Id.*

The Pirate Shops typically offered unauthorized digital copies of Nintendo Switch game files, or "ROMs", which are stored on website servers or "cloud storage" services such as Google Drive.  Compl., ¶29.  Defendant has been involved in every aspect of the Pirate Shops' operations, and has been instrumental in the planning, development, functioning, and proliferation of the Pirate Shops.  Compl., ¶¶29-35.  From 2019 through 2024, Defendant also posted on a Reddit group called "SwitchPirates," eventually becoming a leading (if not primary) moderator of

LOWE GRAHAM JONES PLLC

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

that community, which he helped grow to nearly 190,000 members. *Id.* at ¶¶4, 30; *see* Berkley Decl., ¶¶14-21 & Exs. 8-15. Williams has posted thousands of messages to the SwitchPirates Reddit community – where a badge accompanying his username stated "Moderator – jits/shops support" – including messages directing users to the Pirate Shops and soliciting "donations" of Nintendo eShop Gift Cards for the purchase of games to be copied and distributed on the Pirate Shops. Compl.*, ¶30; *see also* Berkley Decl., Exs. 11, 20. He also has offered technical advice and encouragement about how to use the Pirate Shops, how to download and install Circumvention Software, and how to play pirated copies of Nintendo Switch games. *Id; see, e.g.,* Berkley Decl., Exs. 9-15, 18-20.

As set forth in the Complaint, among the Pirate Shops operated, owned, or administered by Williams are:

- **Jits.cc/Jack-in-the-Shop ("JITS").** Described as "a switch shop focused on distributing as many games as possible to as many people as possible," JITS distributed Nintendo Switch games as well as Circumvention Software. Compl., ¶32(a); *see also* Berkley Decl., ¶¶17-18, 22, 25 & Exs. 9, 11-12, 16, 19. Williams posted frequently about JITS's inner workings, including technical issues with the shop, its dealings with takedown requests, and the cost of running the shop month to month. During the time that JITS functioned, Williams or those working in concert with him distributed thousands of pirated copies of the Nintendo Switch Games through this Pirate Shop, whose Discord server claimed more than 58,000 members. Compl., ¶32(a); *see* Berkley Decl., Exs. 11-12, 14, 16; NOA Decl., ¶¶3, 12 & Ex. 24, 31.

- **Turtle in the Shop (standard and "pro").** The SwitchPirates wiki page described "Turtle in the Shop" as being "run by one of jits' admins" and as "a backup shop available for people when jits is down." *Id.,* ¶32(b). Williams claimed the "pro" version of this Pirate Shop was created to provide access to certain users as "incentive to donate eShop cards to dumping teams" and that "thousands of users" had become members. *Id.* (The "pro" version's Discord server claimed more than 61,000 members. NOA Decl., Ex. 24.) These shops distributed thousands of pirated copies of

LOWE GRAHAM JONES ᴾᴸᴸᶜ

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F. 206.381.3301

the Nintendo Switch Games.  Compl., ¶32(b); *see also* Berkley Decl., Exs. 10, 17-18, 20; NOA Decl., ¶10 & Exs. 28-29.

- **Neko / NekoDrive.**  Neko was a third-party piracy source that merged with "Turtle in the Shop" to create a joint shop under Defendant's control.  Compl., ¶32(c).  Defendant created "NekoDrive" in or around early 2023 as a "pro" shop that, like other such shops, required "donations" and promised users perks across other "partner shops" in return for those donations.  *Id.*  These shops distributed thousands of pirated copies of the Nintendo Switch Games.  *Id.*  The NekoDrive Discord server claimed more than 31,000 members. NOA Decl., ¶¶13-14 & Exs. 24, 32-33; *see also* Berkley Decl., Ex. 17.

- **LiberaShop.**  LiberaShop was created in or about late 2023.  Compl.., ¶32(d).  Defendant promoted LiberaShop on Discord and the SwitchPirates subreddit through multiple posts, and for a time presented his "Archbox" Discord account under the monikers "Libera Tienda Tinfoil 2024" and "libera/tienda."  *Id.*; *see* Berkley Decl., Ex. 18; NOA Decl., ¶¶4-7 & Exs. 25-27.  At the time the Complaint was filed, LiberaShop was distributing over 33,000 digital copies of Nintendo Switch games, including but not limited to the Nintendo Switch Games such as the 30 identified on Schedule A to the Complaint (the "Infringed Games").  Compl., ¶32(d); NOA Decl., ¶¶4-9 & Exs. 25-27.

None of the above activities was authorized by Nintendo, nor by any third-party owner or publisher of Nintendo Switch games.  Compl., ¶34.  In addition, Defendant has been directly involved in creating, operating, promoting, supporting, and/or maintaining several other Pirate Shops, including those known as Teknik, Stealthshop, and Pixel Shop.  *Id.*, ¶33.

**Sourcing Nintendo Switch Games.**  Many of the pirated copies of Nintendo Switch games made available via the Pirate Shops were obtained from an online "community" called "Missing Dumps."  Compl., ¶36.  According to Defendant, Missing Dumps was "the team that consistently release[d] all new eShop content;" Defendant was its primary representative and only lead member.  *Id.*  Formed in or about 2021, the stated intent of Missing Dumps was to "acqui[re]

LOWE GRAHAM JONES ᴘʟʟᴄ

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

1    … new content which works its way to being available to the entire Switch community." *Id.,* ¶37;

2    *see* Berkley Decl., Exs. 17-20.  To this end, Missing Dumps at first used a gift-card donation

3    scheme, whereby Defendant solicited and encouraged users to "donate" Nintendo eShop Gift

4    Cards pre-loaded with Nintendo online store credit to the "Missing Dumps" community,

5    whereupon they were used to purchase and download digital copies of Nintendo Switch Games,

6    which were then made freely reproducible using Circumvention Software.  *Id.,* ¶¶37-38; *see also*

7    Berkley Decl., Exs. 19-20.  Defendant also solicited users to "donate" pirated copies of Nintendo

8    Switch game files themselves.  Compl., ¶¶37, 39.  As a reward for such donations, Defendant

9    offered donors access to the "pro" tier of the Pirate Shops, which offered exclusive pirated content

10   not available on the "standard" tier. *Id.,* ¶37; *see, e.g.,* Berkley Decl., Ex. 18.  Through such

11   schemes, Defendant, acting alone or in concert with others, acquired and made available for

12   download unlawful copies of hundreds or thousands of copyrighted Nintendo Switch Games,

13   including the 30 Infringed Games.  Compl., ¶¶32(d), 34, 40; *see* NOA Decl., ¶¶9, 15.

14         **Defendant's Use and Trafficking of Circumvention Software.**  Members of the public

15   cannot access the Pirate Shops or play pirated copies of Nintendo Switch games through an

16   ordinary, authentic Nintendo Switch console.  Instead, users must install on their Nintendo Switch

17   consoles an unauthorized application (known as "Tinfoil") that enables users to connect to the

18   Pirate Shops and directly download Nintendo Switch games to their consoles.  Compl., ¶41.

19         In the normal course of operation, it is not possible to install unauthorized applications

20   such as Tinfoil on a Nintendo Switch console, nor to use infringing copies of Nintendo Switch

21   games on a Nintendo Switch console.  *Id.*, ¶42.  To do so, a user must bypass or circumvent

22   Nintendo's Console TPMs by modifying (or "hacking") their Nintendo Switch console, then

23   installing a custom operating system that permits users to install and use unauthorized software

24   applications such as Tinfoil and other Circumvention Software.  Specifically, in order to play

25   pirated Nintendo Switch games on a modified Nintendo Switch console, the user must install

26   Circumvention Software such as Signature Patches (or "Sigpatches") to bypass or circumvent

27   Nintendo's Game TPMs. *Id.*

28

**MOTION FOR DEFAULT JUDGMENT**
**Case No.2:24-CV-00960-LK**

LOWE GRAHAM JONES ᴘʟʟᴄ

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F. 206.381.3301

1    Williams was directly involved in creating, promoting, and distributing the Circumvention

2    Software to facilitate widespread use of the Pirate Shops.  For example, via his personal GitHub

3    account, Defendant maintained and developed materials that included the Nintendo Switch-related

4    Circumvention Software.  Compl., ¶43.  Defendant also actively contributed to third-party GitHub

5    repositories that hosted, developed, and distributed Circumvention Software, which Defendant

6    then helped to promote and distribute, including through the JITS website and Reddit

7    SwitchPirates community.  *Id.*, ¶¶43-44*; see also* Berkley Decl., ¶¶21, 27 & Exs. 15, 21.  For

8    example, following a takedown of a GitHub repository containing Circumvention Software (such

9    as Sigpatches and Lockpick) in July of 2022, Defendant announced a new plan to make the

10   software available on foreign "mirror" websites.  Compl., ¶44.  Defendant then linked to these

11   websites and encouraged users to visit them to obtain the Circumvention Software.  *Id.; see also*

12   Berkley Decl., Ex. 15.  Defendant later was involved in the creation, operation, and/or promotion

13   of a standalone website, sigmapatches.su, which offered the Circumvention Software, as well as

14   Nintendo's proprietary cryptographic keys (referred to as prod.keys), for the general public to

15   download.  Compl., ¶45.

16   **C.    NOA's Contacts with Defendant**

17   On March 26, 2024, NOA sent Defendant a letter demanding he immediately shut down

18   his Pirate Shops and cease and desist from any further involvement with any others (the "March

19   2024 C&D Letter").  Compl., ¶46; Berkley Decl., ¶¶8-9.  NOA advised Defendant that if he was

20   unwilling to cooperate, NOA would have no choice but to commence litigation.  Compl., ¶46.

21   In response to the March 2024 C&D Letter, Defendant acknowledged his conduct violated

22   NOA's rights and stated that he would work with NOA to satisfy its demands.  *Id.; see* Berkley

23   Decl., ¶9 & Ex. 5.  He did not, however, agree to cease his conduct, and in fact denied his

24   involvement with the Pirate Shops in several respects.  Compl., ¶47.  When NOA requested that

25   Defendant confirm in writing that he would comply with NOA's demands, he became combative

26   and uncooperative.  *Id.*

27   Following the March 2024 C&D Letter, some of the Pirate Shops or their content became

28   inaccessible – with the notable exception of LiberaShop, which continued to operate through the

LOWE GRAHAM JONES ᴾᴸᴸᶜ

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

1    filing of the Complaint.  *Id.*, ¶48.  Defendant also deleted or hid evidence relevant to NOA's

2    claims, including his GitHub account and social media posts and communications.  *Id.*, ¶49.  On

3    May 17, 2024, NOA gave Defendant a final opportunity to comply with its demands prior to

4    litigation.  Defendant stated that an attorney would be reaching out to NOA, but NOA never

5    received any such outreach, and its efforts to contact Defendant's purported counsel were ignored.

6    *Id.*, ¶50; *see* Berkley Decl., ¶10.

7        **D.    Procedural History**

8        On June 28, 2024, NOA filed the Complaint, which asserted claims for direct and indirect

9    copyright infringement; violation of the anti-circumvention provisions of the Digital Millennium

10   Copyright Act ("DMCA"), 17 U.S.C. § 1201; breach of contract; and tortious interference with

11   contract.  Dkt. 1.

12       On August 13, 2024 NOA effected service on Williams.  *See* Dkt. 9.  On October 18, 2024,

13   following Williams' failure to answer or otherwise respond to the Complaint, NOA requested

14   Entry of Default.  Dkt. 12-13.  On October 24, 2024, this Court requested supplemental briefing

15   demonstrating that the place of service was in fact Defendant's dwelling or usual place of abode.

16   Dkt. 14.  NOA provided such briefing (Dkt. 15-17) and the Clerk entered Defendant's default on

17   November 8, 2024.  Dkt. 18.

18       On November 22, 2024, NOA requested leave from the Court to take limited third-party

19   discovery of various Internet service providers.  Dkt. 19.  The purpose of such discovery was (1)

20   to aid in preparation of the present Motion for Default Judgment, and (2) to determine if additional

21   defendants merited naming in an amended complaint.  *Id.*  The Court granted leave for the

22   proposed discovery on December 13, 2024.  Dkt. 21.  Conducting such discovery has corroborated

23   Williams' involvement with the activities alleged in the Complaint.  Berkley Decl., ¶¶28-29 &

24   Exs. 22-23.

25       On January 17, 2025, NOA's counsel was contacted via email by a Seattle-based attorney,

26   William Burnside, who claimed to represent Williams.  Mr. Burnside subsequently filed a "Notice

27   of Limited Appearance" with this Court "for the limited purpose of responding to [NOA's] third-

28   party subpoena to Google LLC."  Berkley Decl. ¶¶12-13 & Exs. 6-7; Dkt. 22.  Burnside's January

**MOTION FOR DEFAULT JUDGMENT**                    8
**Case No.2:24-CV-00960-LK**

LOWE GRAHAM JONES ᴾᴸᴸᶜ

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F. 206.381.3301

17 email acknowledged his client's awareness of NOA's intention to file a motion for default judgment, stating, *inter alia*, that "Mr. Williams understands that Nintendo may have a right to obtain documents in support of its motion for default judgment[.]"  Berkley Decl., Ex. 7.  After multiple interactions with Mr. Burnside concerning the subpoena to Google, NOA and its counsel have had no further contact with Mr. Burnside or Williams.  *Id.*, ¶13.

## III.    DEFAULT JUDGMENT SHOULD BE ENTERED AGAINST WILLIAMS.

A court's decision to grant default judgment is guided by the procedural requirements set forth in Fed. R. Civ. P. 55(b)(2), Local Rule 55, and the following factors (known as the *Eitel* factors):

> (1) the possibility of prejudice to the plaintiff, (2) the merits of plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). While the decision to grant a default judgment is left to the sound discretion of the Court, "[i]n applying this discretionary standard, default judgments are more often granted than denied." *Love v. iCustom Clothing LLC,* 2021 WL 3291885, at *2 (N.D. Cal. Aug. 2, 2021) (citation omitted).

In determining whether to grant a default judgment, "[t]he general rule of law is that upon default the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917-18 (9th Cir. 1987); *see also Visoneering Constr. v. U.S. Fidelity & Guar.*, 661 F.2d 119, 124 (9th Cir. 1981) ("Well pleaded allegations of the petition . . . are taken as admitted on a default judgment."). While a plaintiff must "prov[e] up" damages when seeking a default judgment, this evidentiary burden is "relatively lenient." *AirDoctor, LLC v. Xiamen Qichuang Trade Co.*, 134 F.4th 552, 557 (9th Cir. 2025) (Berzon, J., concurring) (quoting *Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 498 (C.D. Cal. 2003)).

"[T]he Court must draw all reasonable inferences in Plaintiff's favor on account of defendant's failure to participate in the litigation process." *Blizzard Entm't, Inc. v. Reeves*, 2010

MOTION FOR DEFAULT JUDGMENT
Case No.2:24-CV-00960-LK                                    9

LOWE GRAHAM JONES ᴾᴸᴸᶜ

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

1  WL 4054095, at *3 (C.D. Cal. Aug. 10, 2010); *see also Henry v. Sneiders*, 490 F.2d 315, 317 (9th

2  Cir. 1974) (on motion for default judgment, noting that "[a]ny insufficiency of the plaintiff's

3  evidence was a direct result of appellant's refusal to comply with a legitimate request for

4  discovery").

5      NOA has satisfied the procedural requirements of the Federal and Local Rules, the *Eitel*

6  factors weigh in favor of entering default judgment against Williams, and NOA's requested relief

7  is both reasonable and supported.

8      **A.      This Court Has Jurisdiction.**

9          **1.      Subject Matter Jurisdiction**

10      This Court has subject matter jurisdiction over NOA's claims for copyright infringement,

11  contributory copyright infringement and inducement of infringement, and violation of the anti-

12  circumvention provisions of the DMCA pursuant to 28 U.S.C. §§ 1331 and 1338(a).  This Court

13  has supplemental jurisdiction over NOA's state law claims for breach of contract and intentional

14  interference with contractual relations pursuant to 28 U.S.C. § 1367, insofar as the claims are so

15  related to NOA's federal claims as to be part of the same case or controversy.

16          **2.      Personal Jurisdiction**

17      Defendant is subject to the jurisdiction of this Court on several bases:

18      First, by agreeing to the EULA for the Nintendo Switch console and/or to the Account

19  EULA, Williams necessarily consented to the jurisdiction of this Court.  *See* Sections II.A, *supra*,

20  and III.B(2)(d), *infra;* Berkley Decl., Exs. 1-4 (EULAs).; *Glud & Marstrand A/S v. Viva*

21  *Magnetics Ltd (Hong Kong),* 2012 WL 12878686, at *2 (W.D. Wash. Aug. 7, 2012) (forum

22  selection clause sufficient to confer personal jurisdiction) (citing *Chan v. Soc'y Expeditions, Inc*.,

23  39 F.3d 1398, 1406-07 (9th Cir. 1994)).  Relatedly, Williams' infringing activities centrally relied

24  on regular interaction with NOA's eShop, located in this forum, where game software was

25  obtained under false pretenses only to be circumvented and distributed through the Pirate Shops.

26      Second, Williams directed his activities to a nationwide audience – including users in

27  Washington.  He did so knowing or with reason to know that NOA is headquartered in the State of

28  Washington and that his conduct – involving highly interactive websites and communities bearing

**MOTION FOR DEFAULT JUDGMENT**                    10
**Case No.2:24-CV-00960-LK**

LOWE GRAHAM JONES ᴾᴸᴸᶜ

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F. 206.381.3301

1   names such as "SwitchPirates," directed to thousands of individuals, including those in the State

2   of Washington – would cause serious harm to NOA in Washington.  *See, e.g.,* Compl., ¶¶2-9, 13;

3   29-40, 44; *Amazon Content Servs. LLC v. Kiss Library*, 2021 WL 5998412, at *2 (W.D. Wash.

4   Dec. 17, 2021) (personal jurisdiction established where defendants operating online venture

5   "knowingly and intentionally infringed on a Washington-based company's copyrighted works and

6   compete[d] with the company in Washington").  *See also Briskin v. Shopify, Inc.*, 135 F.4th 739,

7   758–59 (9th Cir. 2025) (en banc) (holding that personal jurisdiction is appropriate even if the

8   defendant's activities were equally targeted at all fifty States, with no "forum-specific focus" on

9   Washington).

10      Third, Williams retained Washington-based counsel to represent him in connection with

11  this action, who proceeded to file a notice of a purported "limited appearance" without contesting

12  personal jurisdiction.  *See* Dkt. 22.  Accordingly, any jurisdictional challenges have been waived.

13  *Epstein v. Wilder,* 1985 WL 1354, at *1 (N.D. Ill. May 15, 1985) (denying motion to vacate

14  default judgment, noting "[t]here is no such thing as a special and limited appearance in federal

15  court."); Wright & Miller, 5B Fed. Prac. & Proc. Civ. § 1344 (4th ed.) (noting effect of abolition

16  of "technical distinctions between general and special appearances … in federal court": "If the

17  defendant appears in the action, he must interpose any of … objections he may have by motion or

18  in the answer or they will be deemed waived by virtue of Rule 12(h)(1).  In addition, the defendant

19  should act in timely fashion lest the court consider his conduct sufficiently dilatory or inconsistent

20  with the later assertion of one of these threshold defenses to justify declaring a waiver.").

21      **B.      The *Eitel* Factors Weight in Favor of Default Judgment.**

22      The *Eitel* factors weigh strongly in favor of default judgment against Williams.

23          **1.      Possibility of Prejudice**

24      The first *Eitel* factor considers whether NOA will suffer prejudice if default judgment is

25  not entered.  *Eitel*, 782 F.2d at 1471-72.  A plaintiff is prejudiced if it will be "left without a legal

26  remedy absent entry of default judgment."  *Eve Nevada, LLC v. Derbyshire*, 2022 WL 279030, at

27  *3 (W.D. Wash. Jan. 31, 2022) (King, J.) (citing, *inter alia*, *Cell Film Holdings, LLC v. Hawkins*,

28  2019 WL 1200535, at *2 (W.D. Wash. Mar. 14, 2019)).  Without a default judgment, NOA will be

**MOTION FOR DEFAULT JUDGMENT**                    11
**Case No.2:24-CV-00960-LK**

1  deprived of the right to judicial resolution of its claims, and Williams will have profited from his

2  illegal conduct with impunity. *See, e.g., Bekins v. Zheleznyak*, 2018 WL 1174997, at *2 (C.D. Cal.

3  Mar. 5, 2018) (finding possibility of prejudice where defendants "have failed to defend this

4  action" and as a result "plaintiffs would be without other recourse for recovery unless default

5  judgment is entered").  By contrast, Williams is aware of this lawsuit and even made a "limited

6  appearance" through counsel, but nevertheless elected not to defend it.

7  **2.    Merits of Claim and Sufficiency of Complaint**

8  The second and third *Eitel* factors "require that a plaintiff state a claim on which the

9  [plaintiff] may recover." *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1175 (C.D. Cal.

10  2002) (internal citations omitted).  For purposes of assessing these two factors, all allegations in

11  the Complaint are deemed true. *Derek Andrew, Inc. v. Poof Apparel Corp.*, 528 F.3d 696, 702 (9th

12  Cir. 2008).  As discussed below, NOA clearly has stated a claim on the merits:

13  **a.    Copyright Infringement**

14  To prevail on a claim for copyright infringement, the plaintiff must demonstrate (1)

15  ownership of the works infringed, and (2) that defendant violated at least one exclusive right under

16  17 U.S.C. § 106. *See A&M Records, Inc. v. Napster, Inc.*, 239 F.3d 1004, 1013 (9th Cir. 2001).

17  NOA has sufficiently alleged, and there can be no dispute, that NOA is the owner of copyright in

18  the Nintendo Switch Games, including the 30 Infringed Games, all of which were distributed

19  through one or more of the Pirate Shops.  *See* Compl., ¶¶17, 32; NOA Decl., ¶¶9, 15; *see also*

20  Berkley Decl., Exs. 10, 16; NOA Decl., Exs. 28, 30-33.

21  As owner of copyrights in the Nintendo Switch Games, NOA possesses the exclusive

22  rights to, among other things, reproduce and distribute the Nintendo Switch Games, and create

23  derivative works of the Nintendo Switch Games.  17 U.S.C. § 106(1), (2), (3).  NOA has

24  sufficiently alleged that by copying, creating, distributing, and using pirated Nintendo Switch

25  Games without NOA's authorization, Williams has infringed NOA's copyrights, including at least

26  its exclusive rights to reproduce and distribute copies of its copyrighted material, including the

27  Schedule A works.  17 U.S.C. § 106; *A&M Records Inc. v. Napster Inc.*, 239 F.3d 1003, 1014 (9th

28  Cir. 2001) ("Napster users who download files containing copyrighted music violate plaintiffs'

**MOTION FOR DEFAULT JUDGMENT**
**Case No.2:24-CV-00960-LK**                    12

LOWE GRAHAM JONES ᴘʟʟᴄ

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

1  reproduction rights."; "Napster users who upload file names to the search index for others to copy

2  violate plaintiffs' distribution rights."); *Arista Records LLC v. Usenet.com, Inc.*, 633 F. Supp. 2d

3  124, 148-49 (S.D.N.Y. 2009) (transmitting copies of digital files was an unlawful distribution).

**b.    Contributory Copyright Infringement and Inducement of**

**Copyright Infringement**

6       The users who downloaded unauthorized copies of Nintendo Switch Games from the

7  Pirate Shops and used the Circumvention Software to access such unauthorized copies also

8  infringed NOA's copyrights.  By promoting the Pirate Shops, offering pirated Nintendo game files

9  to the public via the Pirate Shops, and promoting and offering Circumvention Software knowing it

10 would be used to download and play pirated Nintendo games, Defendant has engaged in acts of

11 contributory infringement and induced others to commit copyright infringement.

12      "[O]ne who, with knowledge of the infringing activity, induces, causes or materially

13 contributes to the infringing conduct of another, may be held liable as a 'contributory' infringer.".

14 *See A&M Records v. Napster, Inc.*, 239 F.3d 1004, 1019 (9th Cir. 2001).  *See also Metro-*

15 *Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 545 U.S. 913, 918 (2005).  Through his operation

16 and promotion of the Pirate Shops, Williams encouraged and induced third-party users to infringe

17 NOA's exclusive rights to reproduce and distribute the Nintendo Switch Games by enabling others

18 to download and play unauthorized copies of Nintendo Switch Games through his operation and

19 promotion of the Pirate Shops.  Williams also has actively encouraged and induced third party

20 users located in the United States to engage in direct infringement of NOA's games, including by

21 distributing and promoting the Circumvention Software and providing guidance and technical

22 support to users seeking to use the Circumvention Software to play unauthorized copies of

23 Nintendo Switch Games.  *Arista Records LLC v. Lime Group LLC*, 784 F. Supp. 2d 398 (S.D.N.Y.

24 2011) (defendant "actively assisted LimeWire users in committing infringement" by offering

25 technical assistance to users, thereby helping users obtain unauthorized copies of recordings).

26 Williams has actual and constructive knowledge of the infringements by users of unauthorized

27 copies of Nintendo Switch Games in the United States, Compl., ¶7.

28

LOWE GRAHAM JONES ᴘʟʟᴄ

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F. 206.381.3301

1

          **c.**      **Circumvention and Trafficking in Circumvention Devices under**

2

               **the DMCA**

3        By using Circumvention Software to make copies of Nintendo Switch games for the Pirate

4  Shops, and by offering and supplying Circumvention Software to members of the public via his

5  websites and online communities, Defendant has violated Sections 1201(a)(1), (a)(2), and (b) of

6  the Digital Millennium Copyright Act ("DMCA").

7       **Circumvention of Technological Measures, 17 U.S.C. § 1201(a)(1)**.  Title 17 U.S.C.

8  Section 1201(a)(1) states: "[n]o person shall circumvent a technological measure that effectively

9  controls access to a work protected under this title." NOA has plausibly alleged each of the

10  elements of this anti-circumvention claim.  Namely**,** the Nintendo Switch Games, including but

11  not limited to those set forth in Schedule A, are copyrighted works (Compl. ¶17); the Nintendo

12  Switch console and Nintendo Switch Games' technological protection measures—*i.e.,* the Console

13  TPMs and the Game TPMS—effectively control access to the Nintendo Switch Games, and

14  prohibit unauthorized copying or use of pirated game files, or of unauthorized software such as

15  "Tinfoil" with the Nintendo Switch console (*id.*, ¶¶21-24, 41-42); and, Williams by necessity

16  circumvented such measures in order to make his own use of pirated Nintendo Switch Games and

17  the Tinfoil software, as well through his activities to access, decrypt, and copy (or "dump")

18  Nintendo Switch Games into digital files made available through the Pirate Shops (*id.*, ¶¶32-45).

19  Williams therefore is liable for violating 17 U.S.C. § 1201(a)(1).  *See e.g., Synopsys, Inc. v.*

20  *InnoGrit, Corp*, 2019 WL 4848387, at *8 (N.D. Cal. Oct. 1, 2019) (denying motion to dismiss,

21  noting that "to 'circumvent a technological measure' means to descramble a scrambled work, to

22  decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a

23  technological measure, without the authority of the copyright owner") (quoting 17 U.S.C. §

24  1201(a)(3)(A)).

25       **Trafficking in Circumvention Devices, 17 U.S.C. § 1201(a)(2).**  Section 1201(a)(2) of

26  Title 17 U.S.C. states:

27
          No person shall manufacture, import, offer to the public, provide, or
          otherwise traffic in any technology, product, service, device,

28
          component, or part thereof, that—(A) is primarily designed or

**MOTION FOR DEFAULT JUDGMENT**         14
**Case No.2:24-CV-00960-LK**

> produced for the purpose of circumventing a technological measure that effectively controls access to a work protected under this title; (B) has only limited commercially significant purpose or use other than to circumvent a technological measure that effectively controls access to a work protected under this title; or (C) is marketed by that person or another acting in concert with that person with that person's knowledge for use in circumventing a technological measure that effectively controls access to a work protected under this title.

Williams offered to the public, provided and otherwise trafficked in the Circumvention Software for the sole and express purpose of facilitating piracy of Nintendo Switch games, and he marketed the Circumvention Software with knowledge that it would be used in circumventing the TPMs. *See, e.g.,* Compl., ¶¶43-45; Berkley Decl., Ex. 15. Williams therefore offered to the public, provided, imported, or otherwise trafficked in technology that violates 17 U.S.C. § 1201(a)(2). *See, e.g., Bungie, Inc. v. Bansal*, 2023 WL 3309496 (W.D. Wash. May 8, 2023) (awarding $5,580,000 in statutory damages on motion for default judgment under §1201(a)(2) where video game company plaintiff showed defendant's cheating software was "designed to circumvent [plainitff's] technological measures to protect its copyrighted works").

**Trafficking in Circumvention Devices, 17 U.S.C. § 1201(b)(1).** Title 17 U.S.C. Section 1201(b)(1) states:

> No person shall manufacture, import, offer to the public, provide, or otherwise traffic in any technology, product, service, device, component, or part thereof, that— (A) is primarily designed or produced for the purpose of circumventing protection afforded by a technological measure that effectively protects a right of a copyright owner under this title in a work or a portion thereof; (B) has only limited commercially significant purpose or use other than to circumvent protection afforded by a technological measure that effectively protects a right of a copyright owner under this title in a work or a portion thereof; or (C) is marketed by that person or another acting in concert with that person with that person's knowledge for use in circumventing protection afforded by a technological measure that effectively protects a right of a copyright owner under this title in a work or a portion thereof.

The anti-trafficking provision of Section 1201(b)(1) differs from that of Section of 1201(a)(2) only by a shift of emphasis: Instead of addressing unlawful circumvention of technical measures that "effectively control[] access" to a copyrighted work, Section 1201(b)(1) addresses

**MOTION FOR DEFAULT JUDGMENT**
**Case No.2:24-CV-00960-LK**                    15

LOWE GRAHAM JONES ₚₗₗc
1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F. 206.381.3301

1    circumvention of measures that "effectively protect[] a right of a copyright owner" in such works.

2    For the same reasons stated above, NOA plausibly alleged each of the elements of this anti-

3    trafficking provision as well.  The entire purpose of Williams' trafficking of the Circumvention

4    Software was to support the operation of the Pirate Shops and to facilitate and encourage the

5    unauthorized reproduction, distribution, and dissemination of Nintendo Switch Games.

6                    **d.      Contract-Based Claims**

7              By copying Nintendo game files, installing and using Circumvention Software, and

8    promoting and otherwise encouraging members of the public to install and use Circumvention

9    Software and to use and "contribute" to the Pirate Shops, Defendant has both personally violated

10   and induced others to violate their agreements with NOA, including, at minimum, the End-User

11   License Agreements ("EULA") that all Nintendo Switch users must consent to prior to using their

12   consoles.  He has thus committed breach of contract and also tortiously interfered with NOA's

13   contracts with other users.

14            **Breach of Contract.**  Nintendo's console EULA and Account EULA are enforceable

15   contracts under Washington law. *See Bungie, Inc*., 2023 WL 3309496, at *6 (video game software

16   license agreement  was "a valid and enforceable contract between [plaintiff] and [its] players");

17   *see also Blizzard Entm't Inc. v. Ceiling Fan Software LLC*, 28 F. Supp. 3d 1006, 1015 (C.D. Cal.

18   2013) (granting summary judgment against hack maker for inducing breach of Blizzard's EULA);

19   *Davidson & Assocs., Inc. v. Internet Gateway*, 334 F. Supp. 2d 1164, 1170-71, 1177-78 (E.D. Mo.

20   2004), *aff'd*, 422F.3d 630 (8th Cir. 2005); *Mendoza v. Microsoft Inc.*, 2014 WL 4540225, *3

21   (W.D. Wash. Sept. 11, 2014) (enforcing online TOUs under Oregon and Texas law); Berkley

22   Decl., Exs. 1-4 (providing that console EULA and Account EULA "shall be subject to and

23   governed by, construed and interpreted in accordance with the laws of the State of Washington,

24   U.S.A., except for its conflict of law rules").

25            As alleged in the Complaint, all users of the Nintendo Switch console are required to

26   consent to the EULA; Williams therefore consented to the EULA by using a Nintendo Switch

27   console.  Compl., ¶25; *see also* Dkt. 16 (Williams customer records).  Furthermore, the Nintendo

28   eShop, (which Williams used to facilitate his purchase of Nintendo Switch Games; *see* Compl.

**MOTION FOR DEFAULT JUDGMENT**                    16
**Case No.2:24-CV-00960-LK**

¶38), requires purchasers and users of software and games located thereon to agree to the Account EULA. *Id.*, ¶26. Nintendo has records demonstrating that Williams accepted the terms of the Account EULA. *Id.*, ¶98.

The console EULA restricts players from, *inter alia*, publishing, copying, modifying, reverse engineering, decompiling, disassembling, distributing, offering for sale, or creating derivative works of any portion of Nintendo's software, as well as bypassing, modifying, defeating, tampering with, or circumventing any of the functions or protections of the console (including without limitation any TPMs), unless otherwise permitted by law. *See* Berkley Decl., Exs. 1 & 2 at Section 1. Furthermore, players agree that they will not "use the Console in an unlawful manner or to access the consoles, devices, accounts, or data of others (including Nintendo) without their (or [Nintendo's]) consent." *Id.* By circumventing the Game and Console TPMs and copying and distributing copies of the Nintendo Switch Games without authorization Williams has clearly breached these terms.

**Tortious Interference with Contract.** Under Washington law, the elements for intentional interference with a contract are "(1) the existence of a valid contractual relationship or business expectancy; (2) that defendants had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage." *World Access, Inc. v. Midwest Underground Tech., Inc.*, 2016 WL 5796873, at *7 (E.D. Wash. Sept. 30, 2016).

As set forth above, the EULA and Account EULA are enforceable contracts, and users of the Nintendo Switch console and games and software downloaded from the Nintendo eShop are required to consent, respectively, to the EULA and Account EULA in order to use the Nintendo Switch console and Nintendo eShop.

Williams is aware of the EULA and Account EULA, and is aware the EULA prohibits players from using Circumvention Software, and that players are at risk of having their accounts and consoles banned should they be caught using the Circumvention Software. Compl., ¶¶25, 96-98, 105; *see also, e.g.* Berkley Decl., Exs. 12-13, 15. Nevertheless, Defendant intentionally

**MOTION FOR DEFAULT JUDGMENT**
**Case No.2:24-CV-00960-LK**                    17

LOWE GRAHAM JONES ᴾᴸᴸᶜ
1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F. 206.381.3301

1    encouraged and induced Nintendo Switch users to utilize Circumvention Software in order to (i)

2    install Tinfoil so that they may access the Pirate Shops and download unauthorized game files

3    embodying Nintendo Switch Games, and (ii) play the unauthorized game files, knowing that such

4    is a breach of these customers' contracts with NOA.  Thousands of such breaches have been

5    committed by users of the Pirate Shops, instigated by Defendant.  Williams took these actions with

6    the improper purpose of violating NOA's intellectual property rights and used improper means

7    including but not limited to use and distribution of the Circumvention Software.

8          NOA has suffered damages as a result of these breaches, including but not limited to

9    decreased profits and a loss of profits related to reproduction and distribution of the Nintendo

10    Switch games and related to users whose accounts NOA has terminated for violation of the

11    EULA.  *See Bungie, Inc*., 2023 WL 3309496, at *6 (granting default judgment as to tortious

12    interference claim involving video game software license agreement).

13          **C.        Amount at Stake**

14          Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in

15    relation to the seriousness of [d]efendant's conduct." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1176.

16    Here, as further detailed below, NOA is seeking an award of $4,500,000.  *Compare, Bungie, Inc*.,

17    2023 WL 3309496, at *7-8, 10 (awarding total of $6,700,973.34, including $300,000 for

18    infringement of two copyrights and $5,580,000 for 2,790 downloads of cheat software in violation

19    of Section 1201).  Here, the amount of money sufficient to remedy NOA's injury would be

20    extremely difficult to quantify; but it is indisputable that such amount would be large.  Therefore,

21    the money at stake by this Motion is nowhere near an amount that would compensate NOA for the

22    seriousness of Defendants' conduct.

23          **D.        Possibility of Dispute Regarding Material Fact**

24          The fifth *Eitel* factor requires the Court to consider the possibility of a dispute as to a

25    material fact. *Eitel*, 782 F.2d at 1471-72.  Initially, there is no possible dispute concerning the

26    material facts because the factual allegations of the FAC are taken as true for purposes of this

27    Motion.  *Marcelos v. Dominguez*, 2009 WL 230033, at *4 (N.D. Cal. Jan. 29, 2009).  In any event,

28    the facts alleged in the Complaint are straightforward, and are not subject to reasonable dispute.

1  *See JBR, Inc. v. Cafe Don Paco, Inc.*, 2014 WL 5034640, at *14 (N.D. Cal. Aug. 25, 2014)

2  ("Because the defendants have not made an effort to challenge the complaint, there is nothing to

3  suggest that a dispute in the facts exists."); *see also W. Reserve Life Assur. Co. v. Canul*, 2012 WL

4  844589, at *3 (E.D. Cal. Mar. 12, 2012) ("[T]here is little possibility of dispute concerning

5  material facts because (1) based on the entry of default, the Court accepts all allegations in

6  Plaintiff's Complaint as true and (2) Defendant has not made any effort to challenge the

7  Complaint or otherwise appear in this case.").

8  **E.    Possibility of Excusable Neglect**

9  Under the sixth *Eitel* factor, the Court considers whether Defendants' default resulted from

10  excusable neglect. *Eitel*, 782 F.2d at 1471-72. As discussed above, Williams was properly served

11  and is fully aware of this lawsuit. Indeed, Williams' counsel expressly acknowledged his client's

12  awareness that NOA intended to file the instant motion. Dkt. 22; Berkley Decl., Ex. 7. NOA also

13  is providing Williams a copy of this Motion at the address used for service of process. Berkley

14  Decl., ¶30.

15  Generally, courts will not find a defendant's failure to participate excusable where the

16  defendant has been properly served and has notice of the entry of default and the motion for

17  default judgment." *JBR, Inc*., 2014 WL 5034640, at *14. The failure to appear is particularly

18  inexcusable here. Williams was in contact with NOA prior to the filing of this lawsuit, refused to

19  comply with reasonable demands, and then, after default, appeared in order to interfere with court-

20  ordered discovery but not to defend the action. *See* Compl., ¶¶46-50; Dkt. 22. Defendant's failure

21  to plead or otherwise defend was not inadvertent – it was a deliberate choice born out of a desire

22  to avoid discovery and force NOA to incur the significant cost of pursuing default judgment and

23  enforcing a judgment without the benefit of party discovery.

24  **F.    Policy for Deciding Case on the Merits**

25  The final *Eitel* factor considers the preference for deciding cases on the merits. *Eitel*, 782

26  F.2d at 1471-72. "However, this factor, standing alone, cannot suffice to prevent entry of default

27  judgment for otherwise default judgment could never be entered." *Warner Bros. Ent. Inc. v.*

28  *Caridi*, 346 F. Supp. 2d 1068, 1073 (C.D. Cal. 2004). Indeed, Rule 55 specifically authorizes the

**MOTION FOR DEFAULT JUDGMENT**
**Case No.2:24-CV-00960-LK**

19

LOWE GRAHAM JONES ᴘʟʟᴄ

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

1  termination of a case before a hearing on the merits in these precise circumstances. *See* Fed. R.

2  Civ. P. 55(a).  Thus, "[w]here, as here, a defendant fails to appear or defend itself in the action,

3  however, the policy favoring decisions on the merits is not dispositive," and this factor may be

4  taken as favoring entry of default judgment.  *Amazon.com, Inc. v. Dong*, 2024 WL 775900, at *7

5  (W.D. Wash. Feb. 26, 2024) (quoting *Amazon.com, Inc. v. Wong*, (W.D. Wash. Feb. 12, 2024).

6  Here, the only reason this lawsuit cannot proceed to the merits is because Williams has failed to

7  defend it.

8  **IV.    PLAINTIFF IS ENTITLED TO A PERMANENT INJUNCTION AND MONETARY**

9  **DAMAGES IN THE AMOUNT OF $4,500,000.**

10  **A.    NOA Is Entitled to a Permanent Injunction**

11  The Copyright Act specifically authorizes the Court to grant injunctive relief to "prevent or

12  restrain infringement of a copyright."  17 U.S.C. § 502(a).  Likewise, the DMCA authorizes the

13  Court to issue temporary or permanent injunctions "on such terms as it deems reasonable to

14  prevent or restrain a violation . . . ."  17 U.S.C. § 1203(b)(1).  A permanent injunction is

15  appropriate where the plaintiff proves (1) irreparable injury, (2) the inadequacy of legal remedies,

16  (3) the balance of hardships favor an injunction, and (4) "that the public interest would not be

17  disserved by a permanent injunction."  *eBay Inc. v. MercExchange*, L.L.C., 547 U.S. 388, 391

18  (2006).  All of these factors favor granting a permanent injunction against Defendant's infringing

19  conduct.

20  ***Irreparable Injury and Inadequate Legal Remedy***:  These two inquiries collapse into one.

21  *Metro-Goldwyn-Mayer Studios, Inc. v. Grokster, Ltd.*, 518 F. Supp. 2d 1197, 1219-20 (C.D. Cal

22  2007).  Both are present here.  **First,** due to Williams's failure (indeed, refusal) to cease his

23  conduct after being contacted by Nintendo—and even after this lawsuit was filed—Nintendo has

24  shown a likelihood of future infringements, which establishes irreparable injury.  *Walt Disney Co.*

25  *v. Powell*, 897 F.2d 565, 568 (D.C. Cir. 1990) (granting injunction where "history of continuing

26  infringement and a significant threat of future infringement remains"); *Microsoft Corp. v.*

27  *Coppola*, 2007 U.S. Dist. LEXIS 40515, at *9-10 (N.D. Cal. May 24, 2007) (granting permanent

28  injunction where plaintiff continued to infringe despite actual notice of infringement).  **Second,**

**MOTION FOR DEFAULT JUDGMENT**    20
**Case No.2:24-CV-00960-LK**

LOWE GRAHAM JONES ᴾᴸᴸᶜ

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F. 206.381.3301

1   sufficient compensation by monetary damages is virtually impossible. In fact, even calculating

2   NOA's actual damages to date is extremely difficult.  In order to calculate NOA's lost revenue

3   related to the distribution of unauthorized games and users banned by NOA by reason of

4   Williams' distribution of Circumvention Software, NOA would need substantial discovery from

5   Williams, which has been precluded by his deliberate default.  **Third,** Williams' infringement

6   deprives NOA of the fundamental right of a property owner to control how, by whom, and in what

7   manner its works are used.  *See Taylor Corp. v. Four Seasons Greetings, LLC*, 403 F.3d 958, 968

8   (8th Cir. 2005).

9        ***Balance of Hardships***:  Likewise, the third factor favors granting NOA's requested

10  permanent injunction.  Many of the same reasons supporting a finding of irreparable injury also

11  show the extreme hardships faced by NOA.  *See Grokster*, 518 F. Supp. 2d at 1220.  Conversely,

12  Williams would face little, if any, hardship if the Court were to enter the permanent injunction.

13  Here, the permanent injunction is narrowly tailored such that it prohibits only future infringing

14  conduct by Williams.  Moreover, if Williams truly believed that he would suffer hardship from an

15  injunction, he would have defended this action.

16       ***Public Interest***:  The fourth and final factor also supports granting the permanent

17  injunction.  "[I]t is virtually axiomatic that the public interest can only be served by upholding

18  copyright protections and, correspondingly, preventing the misappropriation of the skills, creative

19  energies, and resources which are invested in the protected work."  *Apple Computer, Inc. v.*

20  *Franklin Computer Corp.,* 714 F.2d 1240, 1255 (3d Cir. 1983) (internal quotation marks and

21  citation omitted).  Thus, NOA is entitled to a permanent injunction against Williams.

22       ***Form of the Injunction***.  As noted, the proposed injunction is narrowly tailored to prevent

23  only certain specific categories of unlawful conduct.  It would not prevent Williams from

24  engaging in lawful conduct that does not infringe NOA's rights.

25       **B.    NOA Is Entitled to Damages in the Amount of $4,500,000**

26       NOA has been, and continues to be, damaged as a direct and proximate result of Williams'

27  conduct.  NOA has reason to believe that Williams has engaged in the infringing and unlawful

28  reproduction and distribution of hundreds or thousands of copyrighted Nintendo Switch Games,

LOWE GRAHAM JONES PLLC

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F. 206.381.3301

1   and that through the various Pirate Shops, he has distributed or facilitated the distribution of

2   thousands, if not hundreds of thousands, of unauthorized copies of such Nintendo Switch Games.

3   NOA also has expended and continues to expend significant resources to halt or stem video game

4   piracy, including through developing, implementing, and updating its TPMs and policing and

5   investigating reports of piracy such as Williams'.

6          Furthermore, there can be no question that Williams' conduct was willful, and that his

7   willfulness is sufficiently alleged by the Complaint.  *See e.g.*, Compl., ¶¶2-7, 32-49, 56, 64, 82, 91.

8   Indeed, plausible allegations of willfulness are all that is required on a motion for default

9   judgment. *Doggie Dental, Inc. v. Shahid*, 2021 WL 4583649, at *1 (N.D. Cal. Aug. 2, 2021)

10  (awarding $150,000 per infringed work on default where "complaint allege[d] as a factual matter

11  that the infringement was willful, and set[] out sufficient circumstances to make the allegation

12  plausible").  In any event, Williams's own statements and actions are well-documented, and fully

13  support that Williams actually knew his conduct was infringing or else acted with "reckless

14  disregard for, or willful blindness to, the copyright holder's rights."  *Unicolors, Inc. v. Urban*

15  *Outfitters, Inc.*, 853 F.3d 980, 991 (9th Cir. 2017) (citation omitted).  *See, e.g.,* Complaint, ¶6,

16  ("Most of us who hacked our switch are, like you said, pirates and aren't going to give Nintendo

17  $50 for a game."); *Id.,* ¶44 (regarding Circumvention Software: "The github we were uploading to

18  was DMCA'd but we are added a few other mirrors including posting to a Russian only fans

19  scraper…"); Berkley Decl., Exs. 13, 15.

20         Because of the difficulty in assessing the precise amount of actual damages suffered by

21  NOA, exacerbated by Williams's deliberate default and refusal to participate in discovery, NOA

22  has elected to seek statutory maximum statutory damages under 17 U.S.C. § 504(c)(2) for

23  Defendants' willful violations of 17 U.S.C. § 501(a), and is doing so only with respect to the

24  limited set of thirty representative Nintendo Switch Games identified in Schedule A.

25         Section 504(a) of the Copyright Act provides that "an infringer of copyright is liable for . .

26  .  statutory damages, as provided by subsection (c)." 17 U.S.C. § 504(a). Section 504(c) provides

27  that: "the copyright owner may elect, at any time before final judgment is rendered, to recover,

28  instead of actual damages and profits, an award of statutory damages for all infringements

LOWE GRAHAM JONES ᴘʟʟᴄ

1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301

involved in the action, with respect to any one work . . . in a sum of not less than $750 or more than $30,000 as the court considers just." 17 U.S.C. § 504(c)(1). *See also* 4 Melville B. Nimmer & David Nimmer, *Nimmer on Copyright* § 14.04[A], at 14-66 (2002) ("Under the current [Copyright] Act, the copyright owner may elect to recover statutory damages, instead of actual damages and defendant's profits.").  If, as here, the infringement is willful, the award may be increased to $150,000. 17 U.S.C. § 504(c)(2). Maximum statutory damages for copyright infringement may be awarded on motions for default judgment. *See, e.g.*, *Amazon Content Servs. LLC v. Kiss Library*, 2021 WL 5998412, at *7 (W.D. Wash. Dec. 17, 2021) ($7,800,000 in statutory damages for infringement of 54 works); *Doggie Dental*, 2021 WL 4583649, at *1; *Perfect 10, Inc. v. Talisman Comm'ns Inc.*, 2000 WL 364813, at *4 (C.D. Cal. March 27, 2000); *Warner Bros. Entm't Inc. v. Caridi*, 346 F. Supp. 2d 1068, 1072 (C.D. Cal. 2004).

        As set forth herein, NOA does not seek a statutory damages windfall or punitive award. NOA is entitled under 17 U.S.C. § 501(a) to a maximum statutory damages award of $150,000 for *each copyright infringed*.  But, rather than seeking such damages for every Nintendo title Williams actually infringed, NOA seeks statutory damages *only* for those thirty (30) titles listed in Schedule A to the Complaint.[1]

## V.    CONCLUSION

        For the foregoing reasons, NOA respectfully requests that the Court enter a default judgment in favor of NOA and against Williams for a monetary award of $4,500,000 and an injunction in the form of the Proposed Injunction.

---

[1] Nintendo has elected not to seek statutory damages for Williams' DMCA anti-trafficking violations, even though such damages could be several million dollars.  As a further gesture of reasonableness, NOA also has elected not to pursue recovery of its attorneys' fees and costs, to which it is entitled under 17 U.S.C. § 505.

**MOTION FOR DEFAULT JUDGMENT**
**Case No.2:24-CV-00960-LK**

23

Dated: October 3, 2025

_[signature]_

Mark P. Walters (Bar No. 30819)
LOWE GRAHAM JONES
1325 Fourth Avenue, Suite 1130
Seattle, WA 98101
Telephone: (206) 381-3300
Fax: (206) 381-3301
Email: walters@lowegrahamjones.com

Marc E. Mayer (*pro hac vice*)
Mark C. Humphrey (*pro hac vice*)
James D. Berkley (*pro hac vice*)
MITCHELL SILBERBERG & KNUPP LLP
2049 Century Park East, 18th Floor
Los Angeles, CA 90067
Telephone: (310) 312-3154
Email: marc.mayer@msk.com
     mxh@msk.com
     jdb@msk.com

*Attorneys for Plaintiff Nintendo of America Inc.*

## CERTIFICATION AS TO WORD COUNT

I certify that this motion contains 8,399 words, in compliance with the Local Civil Rules and Section VIII.B of this Court's Standing Order for Civil Cases.

Dated: October 3, 2025

_[signature]_

Mark P. Walters (Bar No. 30819)
LOWE GRAHAM JONES
1325 Fourth Avenue, Suite 1130
Seattle, WA 98101
Telephone: (206) 381-3300
Fax: (206) 381-3301
Email: walters@lowegrahamjones.com

LOWE GRAHAM JONES PLLC
1325 Fourth Avenue, Ste. 1130
Seattle, Washington 98101
206.381.3300 • F: 206.381.3301