UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| NINTENDO OF AMERICA INC.,<br><br>Plaintiff,<br><br>v.<br><br>JAMES C. WILLIAMS,<br><br>Defendant. | CASE NO. 2:24-cv-00960-LK<br><br>ORDER GRANTING MOTION FOR DEFAULT JUDGMENT AND PERMANENT INJUNCTION |

This matter comes before the Court on Plaintiff Nintendo of America, Inc.'s Motion for Entry of Default Judgment. Dkt. No. 25. Having reviewed the motion, all supporting materials, and the relevant portions of the record, the Court grants the motion.

## I. BACKGROUND

Nintendo of America ("NOA") alleges that Defendant James C. Williams, known online as "archbox," is a media pirate who illegally copies and distributes Nintendo Switch videogames. Dkt. No. 1 at 2–3; Dkt. No. 17 at 2. NOA alleges that since 2019, Williams has obtained thousands of Nintendo video games, utilized "circumvention device" software to circumvent technological

mechanisms designed to protect the videogames from unauthorized distribution, established several websites and online communities to distribute the videogames and circumvention device software, and thus facilitated thousands of free, unauthorized distributions of the videogames to individuals across the United States. Dkt. No. 1 at 11–19. NOA owns the copyrights to the videogames and accordingly asserts that Williams' infringement deprives it of revenue and "cause[s] permanent and untold damage to Nintendo's intellectual property as well as the intellectual property of others, including Nintendo's development and publishing partners . . . [and] the many artists, game designers, programmers, and others whose livelihoods depend on the sale of authorized Nintendo products." *Id.* at 2, 6.[1] NOA alleges that Williams has infringed "hundreds or thousands of copyrighted Nintendo game files," *id.* at 4, and lists 30 representative copyrighted videogames allegedly infringed by Williams, *id.* at 32.

In March 2024, prior to bringing this lawsuit, an attorney representing NOA sent Williams a cease-and-desist letter, of which he acknowledged receipt. Dkt. No. 26 at 3, 44. The attorney "engaged in an extensive email exchange with Williams" in April and May, during which Williams "indicated that he would be retaining an attorney." *Id.* at 3. NOA's counsel avers that "attempts to contact this attorney were not fruitful," *id.*, and ultimately Williams refused to confirm that he would comply with NOA's demands to cease his conduct, Dkt. No. 1 at 20. Following Williams' receipt of the cease-and-desist letter, NOA alleges that he "undertook to delete or otherwise hide evidence" relevant to NOA's copyright infringement claims, including content generated by his "GitHub account and social media posts" that advertised or housed Williams' circumvention software[2] or the pirated games, as well as several of the online shops where games were made

---

[1] "Nintendo" refers to NOA and its parent company, Nintendo Co., Ltd. *Id.* at 2.

[2] "Circumvention software" as used in the complaint and this Order includes malicious and unlawful software products that are designed to, and have no purpose other than to, circumvent Nintendo's technological measures that protect against the unauthorized access to and use of Nintendo Switch games and the Nintendo Switch console. *Id.* at 3. NOA alleges that because it is not possible to use Williams' pirate shops or to play pirated copies of games on Nintendo

available to download. *Id.*; *see, e.g.*, *id.* at 18–19 (screen shots of Williams' now-deleted GitHub activity promoting and distributing circumvention software).

This lawsuit followed. Dkt. No. 1. NOA brings seven claims against Williams: (1) willful copyright infringement in violation of 17 U.S.C. § 101 *et seq.*; (2) contributory infringement and inducement of copyright infringement in violation of 17 U.S.C. § 501(a); (3) circumvention of technological measures in violation of 17 U.S.C. § 1201(a)(1); (4) trafficking in circumvention devices in violation of 17 U.S.C. § 1201(a)(2); (5) trafficking in circumvention devices in violation of 17 U.S.C. § 1201(b)(1); (6) breach of contract; and (7) tortious interference with contract. *Id.* at 20–30. The relief requested in the complaint includes injunctive relief preventing Williams from continuing to distribute its copyrighted material and requiring him to shut down any online platforms used to that end; damages pursuant to 17 U.S.C. § 1203(c) for violations of the Digital Millenium Copyright Act ("DMCA"); damages pursuant to 17 U.S.C. § 504 for violations of the Copyright Act; attorney's fees and costs; damages for breach of contract; exemplary and punitive damages for tortious interference with contract; an award of restitution of Williams' unlawful proceeds; and imposition of a constructive trust over the unlawful proceeds. *Id.* at 30–31.

NOA filed proof of service of the summons and complaint on Williams, Dkt. No. 9, and after Williams failed to appear in the case, requested that the clerk enter default against Williams pursuant to Rule 55(a), Dkt. No. 12. The Court requested supplemental briefing regarding the address at which NOA effected service, Dkt. No. 14; NOA responded with evidence demonstrating that the address at which Williams was served is his dwelling or usual place of abode, Dkt. No. 15, *see* Fed. R. Civ. P. 4(e)(2)(B). Satisfied that service was proper, the clerk entered default against Williams. Dkt. No. 18.

---

Switch without such circumvention software, Williams "hosts websites and online 'communities' dedicated to offering the [c]ircumvention [s]oftware and to providing assistance to others seeking to use such software." *Id.*

NOA then requested leave to take limited discovery by serving subpoenas on third-party Internet service providers, Dkt. No. 19, which the Court granted, Dkt. No. 21. Soon thereafter, attorney William R. Burnside filed a notice of his appearance as counsel to Williams "for the limited purpose of responding to [NOA's] third-party subpoena to Google LLC"; Burnside asserted that "this limited appearance should not be construed as an appearance for all purposes related to the above-entitled action." Dkt. No. 22. Burnside refrained from answering NOA's counsel's inquiries regarding whether Williams planned to appear in the lawsuit. Dkt. No. 26 at 46–48.

Approximately 11 months after the clerk entered default, NOA moved for default judgment. Dkt. No. 25. It served the motion, proposed judgment and permanent injunction, and associated declarations and exhibits on Williams at his dwelling or usual place of abode and via email. Dkt. No. 28 at 2.

## II. DISCUSSION

### A. Jurisdiction

Before entering default judgment, district courts must evaluate subject matter and personal jurisdiction. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999) ("When entry of judgment is sought against a party who has failed to plead or otherwise defend, a district court has an affirmative duty to look into its jurisdiction over both the subject matter and the parties."). This Court has subject matter jurisdiction over NOA's claims for copyright infringement and for violations of the DMCA pursuant to 28 U.S.C. §§ 1331 and 1338(a) and 17 U.S.C. § 101 *et seq*. The Court has supplemental jurisdiction over NOA's state law claims pursuant to 28 U.S.C. § 1367 because the claims are so related to the federal claims that they form part of the same case or controversy.

NOA asserts that Williams resides in Arizona, Dkt. No. 1 at 6, meaning he is a non-resident defendant. "The general rule is that personal jurisdiction over a defendant is proper if it is permitted

by a long-arm statute and if the exercise of that jurisdiction does not violate federal due process." *Pebble Beach Co. v. Caddy*, 453 F.3d 1151, 1154 (9th Cir. 2006). Where, as here, there is no applicable federal statute governing personal jurisdiction over a non-resident defendant, a district court applies the law of the state in which it sits. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir. 1998); *see also Ranza v. Nike, Inc.*, 793 F.3d 1059, 1068 (9th Cir. 2015); Fed. R. Civ. P. 4(k)(1)(A). Washington's long-arm statute is coextensive with federal due process requirements. *See* Wash. Rev. Code § 4.28.185; *Downing v. Losvar*, 507 P.3d 894, 905–06 (Wash. Ct. App. 2022) ("[T]he Washington Supreme Court has consistently ruled that the state long-arm statute permits jurisdiction over nonresident individuals . . . to the extent permitted by the due process clause of the United States Constitution."). Thus, the Court must consider "whether the requirements of due process are satisfied by [its] exercise of personal jurisdiction over" Williams. *Panavision*, 141 F.3d at 1320; *accord Picot v. Weston*, 780 F.3d 1206, 1211 (9th Cir. 2015).

Because NOA does not contend that general jurisdiction exists over Williams in Washington, *see* Dkt. No. 25 at 16–17, the Court uses the Ninth Circuit's three-prong test for determining whether Williams is subject to specific personal jurisdiction:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;
>
> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and
>
> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e. it must be reasonable.

*Schwarzenegger v. Fred Martin Motor Co.*, 374 F.3d 797, 802 (9th Cir. 2004) (quoting *Lake v. Lake*, 817 F.2d 1416, 1421 (9th Cir. 1987)).

Based on the above factors, the Court concludes that exercise of specific personal jurisdiction over Williams is proper. In order to obtain Nintendo Switch games and to use the

Nintendo eShop, Williams had to consent to end-user licensing agreements ("EULAs") that included a choice of law and venue provision stating that any disputes arising in connection with the EULAs shall be governed by Washington law and that "the parties consent to the exclusive jurisdiction of the courts located in King County, Washington, U.S.A." Dkt. No. 26 at 14, 33; *see also* Dkt. No. 25 at 9, 16; Dkt. No. 1 at 28. "[A] valid forum-selection clause should be given controlling weight in all but the most exceptional cases." *Atl. Marine Constr. Co. v. United States Dist. Ct.*, 571 U.S. 49, 63 (2013) (citation modified). No exceptional circumstances exist here.

## III. LEGAL STANDARD

The court has discretion to grant or deny a motion for default judgment. *Hawaii Carpenters' Tr. Funds v. Stone*, 794 F.2d 508, 511–12 (9th Cir. 1986). Default judgments are ordinarily disfavored, and cases should be decided on their merits if reasonably possible. *Eitel v. McCool*, 782 F.2d 1470, 1472 (9th Cir. 1986). Courts may consider the following factors in deciding whether to grant a motion for default judgment (collectively, "*Eitel* factors"):

> (1) the possibility of prejudice to the plaintiff, (2) the merits of the plaintiff's substantive claim, (3) the sufficiency of the complaint, (4) the sum of money at stake in the action, (5) the possibility of a dispute concerning material facts, (6) whether the default was due to excusable neglect, and (7) the strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits.

*Id*. at 1471–72 (citation modified).

On default, "the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *TeleVideo Sys., Inc. v. Heidenthal*, 826 F.2d 915, 917–18 (9th Cir. 1987) (quoting *Geddes v. United Fin. Group*, 559 F.2d 557, 560 (9th Cir. 1977)). However, the plaintiff must establish the relief to which it is entitled. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). Accordingly, "necessary facts not contained in the pleadings, and the claims which are legally insufficient, are not established by default." *Cripps v. Life Ins. Co. of N. Am.*, 980 F.2d 1261, 1267 (9th Cir. 1992).

## IV. DISCUSSION

### A. NOA Is Entitled to Default Judgment

The Court has considered the *Eitel* factors and finds that default judgment is appropriate for the reasons explained below.

1. <u>The possibility of prejudice to the plaintiff</u>

The first *Eitel* factor considers whether the plaintiff would suffer prejudice if default judgment is not entered. *See, e.g., PepsiCo, Inc., v. California Security Cans*, 238 F. Supp. 2d 1172, 1177 (C.D. Cal. 2002). NOA filed its suit in June 2024, and Williams has failed to respond or otherwise put forth a defense in this action, despite clearly receiving notice of the lawsuit. *See* Dkt. Nos. 9, 15–17, 22, 28. NOA is prejudiced because it is left without a legal remedy absent entry of default judgment. Therefore, the first factor weighs in favor of entering default judgment. *See Cell Film Holdings, LLC v. Hawkins*, No. C16-1091-RSL, 2019 WL 1200535, at *2 (W.D. Wash. Mar. 14, 2019); *Eve Nevada, LLC v. Derbyshire*, No. 21-0251-LK, 2022 WL 279030, at *3 (W.D. Wash. Jan. 31, 2022).

2. <u>The merits of NOA's substantive claims and the sufficiency of the complaint</u>

In evaluating the second and third factors, the Court considers the merits of the plaintiff's claims and whether the allegations in the complaint are sufficient to state a claim on which the plaintiff may recover. *See Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978).

*(a) Copyright Infringement*

To establish a claim of direct copyright infringement, a plaintiff must "(1) show ownership of the allegedly infringed material and (2) demonstrate that the alleged infringers violate at least one exclusive right granted to copyright holders under 17 U.S.C. § 106." *Disney Enters., Inc. v. VidAngel, Inc.*, 869 F.3d 848, 856 (9th Cir. 2017) (citation modified); *see also* 17 U.S.C. § 501(a). To establish a claim for contributory copyright infringement, a plaintiff must demonstrate that the

defendant (1) knew, or had reason to know, of the infringing conduct and (2) induced, caused, or materially contributed to the infringing conduct. *Luvdarts, LLC v. AT&T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013); *see also Ellison v. Robertson*, 357 F.3d 1072, 1076 (9th Cir. 2004). To prove "willfulness" under the Copyright Act, "the plaintiff must show (1) that the defendant was actually aware of the infringing activity, or (2) that the defendant's actions were the result of 'reckless disregard' for, or 'willful blindness' to, the copyright holder's rights." *Louis Vuitton Malletier, S.A. v. Akanoc Sols., Inc.*, 658 F.3d 936, 944 (9th Cir. 2011) (citation modified).

NOA has sufficiently alleged that it is the owner of copyrights in the Nintendo Switch videogames, including the 30 games identified in Schedule A of its complaint, all of which were distributed through one or more of the online pirate shops operated by Williams. *See infra* n.3, Dkt. No. 1 at 8, 13–15, 32; Dkt. No. 26 at 5–6, 60, 82; Dkt. No. 27 at 3–4, 19–26.

As owner of copyrights in the Nintendo Switch games, NOA possesses the exclusive rights to, among other things, reproduce, distribute, and create derivative works of the videogames. 17 U.S.C. § 106(1), (2), (3). NOA has sufficiently demonstrated that by copying, creating, distributing, and using pirated Nintendo Switch games without NOA's authorization, typically through offering the games "in the form of unverified ROM files . . . stored on website servers or 'cloud storage' services" in Williams' numerous online pirate shops, Williams has infringed NOA's copyrights, including at least its exclusive rights to reproduce and distribute copies of the copyrighted material in the 30 games listed in Schedule A to the complaint. Dkt. No. 1 at 11, 20–21, 32; *see also id.* at 4 (images of Williams' online posts referring to himself as a "pirate" who "[is]n't going to give Nintendo $50 for a game"); *id.* at 12, 15 (stating that Williams became a leading moderator of the SwitchPirates Reddit community, where he posted thousands of messages directing users to the pirate shops; soliciting "donations" of pirated Nintendo Switch games or Nintendo eShop Gift Cards for the purchase of games to be decrypted and then distributed on the

pirate shops; and offering technical advice and encouragement to other users about how to use the pirate shops, how to download and install circumvention software, and how to play pirated copies of Nintendo Switch games); *id.* at 13–15 (describing Williams' numerous pirate shops that distributed thousands of pirated copies of Nintendo Switch games); *id.* at 16–19 (describing, and providing screen shots of online posts showing, how Williams sourced the pirated copies of Nintendo Switch games for his pirate shops). NOA also adequately alleges that Williams knew the videogames were copyrighted but nevertheless created pirated versions of the games and undertook extensive efforts to distribute them broadly. Dkt. No. 1 at 2–5, 21; *see, e.g.*, *id.* at 4 (Williams' online post referring to himself as a "pirate" who "[is]n't going to give Nintendo $50 for a game"); *id.* at 19 (Williams' post on SwitchPirates stating, "The github we were uploading to was DMCA'd but we are added [sic] a few other mirrors including posting to a Russian only fans scraper."). NOA has thus stated a claim for willful copyright infringement against Williams.

*(b) Contributory Copyright Infringement and Inducement of Copyright Infringement*

To prevail on a claim for contributory copyright infringement, a plaintiff must demonstrate that the defendant (1) knew, or had reason to know, of the infringing conduct and (2) induced, caused, or materially contributed to the infringing conduct. *Luvdarts, LLC v. AT & T Mobility, LLC*, 710 F.3d 1068, 1072 (9th Cir. 2013); *see also Ellison v. Robertson,* 357 F.3d 1072, 1076 (9th Cir. 2004). "[P]roviding the site and facilities for known infringing activity is sufficient to establish contributory liability." *Fonovisa, Inc. v. Cherry Auction, Inc.*, 76 F.3d 259, 264 (9th Cir. 1996).

NOA has demonstrated that Williams promoted online shops offering pirated Nintendo game files and circumvention software, encouraged others to contribute pirated Nintendo games to his pirate shops, and assisted others in distributing pirated Nintendo Switch games, even though he knew such activity violated copyright laws. Dkt. No. 1 at 11–15; *see also id.* at 12, 15 (describing how Williams, as a leading moderator of the SwitchPirates Reddit community, helped

grow the community to nearly 190,000 members; posted thousands of messages directing those members to the pirate shops; solicited "donations" of Nintendo eShop Gift Cards for the purchase of games (or solicited copies of Nintendo Switch games themselves) to be copied and then distributed on the pirate shops; and offered technical advice and encouragement to other users about how to use the pirate shops, how to download and install circumvention software, and how to play pirated copies of Nintendo Switch games); *id.* at 14–15 (alleging that Williams disabled his pirate shops and/or ceased activity on the sites following his receipt of NOA's cease-and-desist letter); *id.* at 15 (averring that Williams has offered technical assistance to the operators of other pirate shops and acted as a moderator in Discord servers dedicated to these pirate shops); *id.* at 16–19 (describing how Williams solicited "donations" of pirated Nintendo Switch games and of gift cards he could then use to download games and make pirated copies). Accordingly, NOA has sufficiently alleged that Williams intentionally facilitated the distribution of pirated video games by materially contributing to the infringing conduct of other individuals who distributed pirated Nintendo games with his assistance, or who learned about the online shops from Williams' online posts and used those shops to download pirated videogames without paying NOA, despite NOA's exclusive copyrights to the games. Dkt. No. 1 at 22–23.

*(c) Circumvention and Trafficking in Circumvention Devices under the DMCA*

The DMCA prohibits circumvention of any technological measure that effectively controls access to or protects a copyrighted work or trafficking in such circumvention technologies. 17 U.S.C. §§ 1201(a), (b)(1). NOA alleges that although its video games are protected by software that effectively prevents access to its games and protects NOA's rights with respect to distribution of its works, Williams created and used software to circumvent these protections and access the games without authorization from NOA, and also promoted and distributed circumvention software through online communities to encourage others to do the same. Dkt. No. 1 at 9–10

(describing NOA's technological access controls and protection measures); *id.* at 11–15, 17–19 (recounting how Williams distributed circumvention software through his pirate shops and offered technical advice and encouragement to others with respect to downloading and installing circumvention software to play pirated Nintendo Switch games). These allegations are sufficient to state claims for violations of the anti-circumvention and anti-trafficking provisions of the DMCA. 17 U.S.C. §§ 1201(a), (b)(1); *see* 17 U.S.C. § 1201(a)(3)(A) ("to 'circumvent a technological measure' means to descramble a scrambled work, to decrypt an encrypted work, or otherwise to avoid, bypass, remove, deactivate, or impair a technological measure, without the authority of the copyright owner").

*(d) Contract Claims*

NOA alleges breach of contract and tortious interference with contract against Williams based on the console EULA to which he agreed. Dkt. No. 1 at 10–11, 27–30; *see also Blizzard Ent. Inc. v. Ceiling Fan Software LLC*, 28 F. Supp. 3d 1006, 1015 (C.D. Cal. 2013) (where users must enter into an EULA before using games, the EULA is an enforceable contract). The console EULA prohibits players from distributing unauthorized copies of video games and from circumventing any of the protections of the Nintendo Switch console. Dkt. No. 1 at 10–11, 28; Dkt. No. 26 at 11. NOA's detailed factual allegations (described above) that, despite the prohibitions in the EULA, Williams circumvented the protections on the Nintendo Switch games and copied and distributed those games without NOA's consent, thereby causing NOA to lose profits from Williams and from the users of his pirate shops and damaging NOA's intellectual property, Dkt. No. 1 at 6, 28, adequately state a claim for breach of contract under Washington law. *Nw. Indep. Forest Mfrs. v. Dep't of Lab. & Indus.*, 899 P.2d 6, 9 (Wash. 1995) (To establish a breach of contract claim under Washington law, a plaintiff must show that "the contract imposes a duty, the duty is breached, and the breach proximately causes damage to the claimant.").

"A claim for tortious interference with a contractual relationship or business expectancy requires five elements: (1) the existence of a valid contractual relationship or business expectancy; (2) that defendants had knowledge of that relationship; (3) an intentional interference inducing or causing a breach or termination of the relationship or expectancy; (4) that defendants interfered for an improper purpose or used improper means; and (5) resultant damage." *Leingang v. Pierce Cnty. Med. Bureau, Inc.*, 930 P.2d 288, 300 (Wash. 1997). NOA alleges that Williams consented to the EULA and knew of the EULA's prohibition on use of circumvention software, and he nevertheless encouraged and induced other Nintendo Switch users to use circumvention software to access the pirate shops and the pirated Nintendo Switch games and to play those games, knowing that these Nintendo Switch users would be breaching their EULAs by doing so. Dkt. No. 1 at 10–11, 28–29; *see* Dkt. No. 26 at 5–6, 68–79. As a result, NOA suffered lost and decreased profits from users whose accounts NOA terminated for breach of their EULAs. Dkt. No. 1 at 29. These allegations are sufficient to state a claim for tortious interference.

In sum, all of NOA's claims are well pleaded and are sufficient to establish the merits of the claims.

3. <u>The sum of money at stake in the action</u>

Under the fourth *Eitel* factor, "the court must consider the amount of money at stake in relation to the seriousness of Defendant's conduct." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1176–77. This requires the court to assess whether the recovery sought is proportional to the harm caused by defendants' conduct. "Default judgment is disfavored where the sum of money at stake is too large or unreasonable in relation to defendant's conduct." *Vogel v. Rite Aid Corp.*, 992 F. Supp. 2d 998, 1012 (C.D. Cal. 2014).

NOA seeks an award of $4,500,000. Dkt. No. 25 at 24. This sum represents the $150,000 maximum statutory damage amount allowed for a willful copyright violation for each of the 30

games listed in Schedule A. *Infra* n.3; 17 U.S.C. § 504(c)(2); Dkt. No. 25 at 28–29; *see* Dkt. No. 1 at 32. NOA notes that, due to Williams' refusal participate in the lawsuit and NOA's inability to conduct discovery, "the amount of money sufficient to remedy NOA's injury would be extremely difficult to quantify; but it is indisputable that such amount would be large," Dkt. No. 25 at 24, based on the fact that Williams has helped distribute "thousands, if not hundreds of thousands, of unauthorized copies" of videogames, *id.* at 28. For the reasons laid out in Section IV.A.2 above, NOA has sufficiently alleged that Williams' infringement of its copyrights was willful. Dkt. No. 1 at 21.

NOA notes that as a "gesture of reasonableness," it does not seek damages for every infringement of its copyrights (only for the 30 games listed in Schedule A), does not seek statutory damages under the DCMA, and is not pursuing attorney's fees. Dkt. No. 25 at 29 & n.1. While $4,500,000 is a substantial award, considering the extent of the alleged piracy scheme, Williams' willful conduct and his decision not to raise any defense in this case despite his awareness of the lawsuit, and NOA's decision to seek far less damages than it could potentially recover, the Court finds that the requested damages amount is reasonable. *See Amazon Content Servs. LLC*, 2021 WL 5998412, at *3–4 (granting default judgment with requested award of $7,800,000 for 52 infringed works where copyright infringement was willful); *Doggie Dental, Inc. v. Shahid*, No. 19-CV-01705-RS, 2021 WL 4583649, at *1 (N.D. Cal. Aug. 2, 2021) (awarding $150,000 per infringed work on default where "complaint allege[d] as a factual matter that the infringement was willful, and set[] out sufficient circumstances to make the allegation plausible"). The sum of money at stake therefore does not weigh against entry of default judgment.

4. The possibility of a dispute concerning material facts

As for the fifth factor, no genuine issue of material fact exists. Once default is entered, well-pleaded factual allegations in the operative complaint are taken as true except for the allegations relating to damages. *TeleVideo*, 826 F.2d at 917–18.

5. Whether the default was due to excusable neglect

Turning to the sixth factor, the record contains no indication that Williams' default was due to excusable neglect. Williams has been served and given sufficient notice of both the complaint and NOA's motion for default. *See* Dkt. Nos. 9, 15–17, 22, 28. Underscoring Williams' awareness of the lawsuit is the fact that he hired counsel who appeared in this case to contest a third-party subpoena. Dkt. No. 22; Dkt. No. 26 at 47–48, 51–52. Because there is no evidence of excusable neglect, this factor favors the entry of default judgment on NOA's copyright claim.

6. The strong policy underlying the Federal Rules of Civil Procedure favoring decisions on the merits

Finally, the Court is aware that "[c]ases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. However, the existence of Rule 55(b) "indicates that this preference, standing alone, is not dispositive," because Rule 55 allows a court to issue a default judgment if the defendant fails to appear and defend. *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177 (citation modified). Accordingly, although the Court is cognizant of the policy in favor of decisions on the merits, that policy does not preclude the entry of default judgment where Williams has failed to appear or defend and the other *Eitel* factors weigh in favor of entering a default judgment on NOA's copyright claims.

* * *

In sum, the Court finds that the *Eitel* factors weigh in favor of entry of default judgment on NOA's copyright claim.

**B. NOA Is Entitled to Damages and Injunctive Relief**

Having found that entry of default judgment is warranted, the Court turns to the relief NOA seeks. NOA seeks (1) damages and (2) permanent injunctive relief in the form of an order preventing Williams from continuing to infringe NOA's copyrights through his distribution activity. Dkt. No. 25 at 26–29. The Court discusses each in turn.

1. Damages

NOA seeks an award of $150,000 for each of the 30 videogames listed in Schedule A of its complaint that Williams infringed, which is the statutory maximum for a willful copyright infringement. *Infra* n.3; Dkt. No. 25 at 28–29; Dkt. No. 1 at 32; *see* 17 U.S.C. § 504(c)(2). The Court does not presume the truth of any factual allegations related to the amount of damages. *TeleVideo Sys., Inc.*, 826 F.2d at 917–18.

A party may elect to receive statutory, rather than actual, damages for infringement of registered copyrights, "regardless of the adequacy of the evidence offered as to [its] actual damages and the amount of the defendant's profits." *Columbia Pictures Television, Inc. v. Krypton Broad. of Birmingham, Inc.*, 259 F.3d 1186, 1194 (9th Cir. 2001) (citation modified); *see* 17 U.S.C. § 504(c)(1). The Copyright Act sets a $750 minimum and a $30,000 maximum award of statutory damages for copyright infringement, and the maximum award can be increased to as much as $150,000 where the infringement was willful. 17 U.S.C. § 504(c)(1)–(2). "If statutory damages are elected, the court has wide discretion in determining the amount of statutory damages to be awarded, constrained only by the specified maxima and minima" in the statute. *Peer Int'l Corp. v. Pausa Recs., Inc.*, 909 F.2d 1332, 1336 (9th Cir. 1990) (citation modified).

To determine the appropriate amount of statutory damages for willful copyright infringement, courts typically consider four factors: "(1) the infringers' profits and the expenses they saved because of the infringement; (2) the plaintiff's lost revenues; (3) the strong public

interest in ensuring the integrity of copyright laws; and (4) whether the infringer acted willfully." *Curtis v. Illumination Arts, Inc.*, 33 F. Supp. 3d 1200, 1217 (W.D. Wash. 2014) (collecting cases). Here, all four factors favor awarding the maximum statutory amount for each violation.

With respect to the first two factors, although NOA has not been able to specifically quantify the revenue that it lost (which is inversely related to the money that Williams and others saved by playing pirated games instead of buying them), its assertion that Williams "distributed thousands of pirated copies" of Nintendo Switch games is well-supported by the allegations and evidence it has provided. Dkt. No. 1 at 3–4, 11–19. At roughly $50 per game, *id.* at 4, the total amount of profits lost due to the infringement could easily reach the hundreds of thousands of dollars, making the statutory maximum not an unrealistic estimate of NOA's actual damages.

The third factor weighs in favor of the statutory maximum penalty because "the public has a compelling interest in protecting copyright owners' marketable rights to their work and the economic incentive to continue creating" new works. *Disney Enters., Inc*, 869 F.3d at 867 (citation modified).

The last factor also weighs heavily in favor of the statutory maximum penalty because NOA's complaint contains well-supported and extensive allegations that Williams knew the videogames were copyrighted but willfully undertook his copying and distribution efforts anyway. Dkt. No. 1 at 2–5, 21; *see, e.g.*, *id.* at 4 (Williams' online post referring to himself as a "pirate" who "[is]n't going to give Nintendo $50 for a game"); *id.* at 19 (Williams' post on SwitchPirates stating, "The github we were uploading to was DMCA'd but we are added [sic] a few other mirrors including posting to a Russian only fans scraper."). Indeed, "statutory damages serve both compensatory and punitive purposes," *L.A. News Serv. v. Reuters Television Int'l, Ltd.*, 149 F.3d 987, 996 (9th Cir. 1998), and Williams' egregious infringement activities merit substantial punishment here.

Particularly considering NOA's restraint in not pursuing other damages to which it could be entitled to relief, Dkt. No. 25 at 29 & n.1, the Court concludes that the statutory maximum penalty for willful copyright infringement of $150,000 for each of the 30 videogames listed in Schedule A, Dkt. No. 1 at 32,[3] for a total of $4,500,000, is appropriate. *See Amazon Content Servs. LLC*, 2021 WL 5998412, at *3–4; *Doggie Dental, Inc.*, 2021 WL 4583649, at *1.

---

[3] The games are:

1. Advance Wars 1+2: Re-Boot Camp (Registration No. PA0002428124);
2. ANIMAL CROSSING: NEW HORIZONS (Registration No. PA0002233840);
3. ARMS (Registration No. PA0002038228);
4. Big Brain Academy: Brain vs. Brain (Registration No. PA0002336269);
5. CAPTAIN TOAD: TREASURE TRACKER (Registration No. PA0002138114 / PA0001932025);
6. DONKEY KONG COUNTRY: TROPICAL FREEZE (Registration No. PA0002128734 / PA0001920486);
7. Game Builder Garage (Registration No. PA0002312185);
8. Luigi's Mansion 3 (Registration No. PA0002213908);
9. Mario Kart 8 Deluxe (Registration No. PA0002051900 / PA0001906587);
10. Mario Party Superstars (Registration No. PA0002336296);
11. Mario Strikers: Battle League (Registration No. PA0002360933);
12. Metroid Dread (Registration No. PA0002322591);
13. NEW SUPER MARIO BROS.U DELUXE (Registration No. PA0002179319 / PA0001869403 / PA0001834365);
14. Nintendo Switch Sports (Registration No. PA0002347458);
15. Pikmin 4 (Registration No. PA0002428121);
16. Princess Peach: Showtime! (Registration No. PA0002461527);
17. Splatoon 2 (Registration No. PA0002047788);
18. Splatoon 3 (Registration No. PA0002369709);
19. SUPER MARIO 3D WORLD + BOWSER'S FURY (Registration No. PA0002290935);
20. Super Mario Bros. Wonder (Registration No. PA0002435940);
21. Super Mario Maker 2 (Registration No. PA0002213509);
22. Super Mario Odyssey (Registration No. PA0002062889);
23. Super Mario Party (Registration No. PA0002140681);
24. Super Smash Bros. Ultimate (Registration No. PA0002151614);
25. The Legend of Zelda: Breath of the Wild (Registration No. PA0002028142);
26. THE LEGEND OF ZELDA: LINK'S AWAKENING (Registration No. PA0002212311);
27. The Legend of Zelda: Tears of the Kingdom (Registration No. PA0002411256);
28. WarioWare: Get It Together! (Registration No. PA0002331222);
29. WarioWare: Move: It! (Registration No. PA0002444515); and
30. Yoshi's Crafted World (Registration No. PA0002197776).

Dkt. No. 1 at 32.

2. Injunctive Relief

NOA requests a permanent injunction that would, among other things, require Williams to "immediately disable access to all online 'shops' that he operates . . . which have offered to the public extensive libraries of pirated Nintendo Switch games for download" and to disable all associated social media and other platforms used to distribute illegal copies of games or circumvention devices. Dkt. No. 25-1 at 5.

The Copyright Act allows a court to "grant temporary and final injunctions on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. § 502(a). The DCMA similarly allows a court to grant "temporary and permanent injunctions on such terms as it deems reasonable to prevent or restrain a violation." 17 U.S.C. § 1203(b)(1). However, "an injunction [does not] automatically follow[] a determination that a copyright has been infringed." *eBay, Inc. v. MercExchange, LLC*, 547 U.S. 388, 392 (2006). "An injunction should issue only where the intervention of a court of equity is essential in order effectually to protect property rights against injuries otherwise irremediable." *Weinberger v. Romero-Barcelo*, 456 U.S. 305, 312 (1982) (citation modified). To be entitled to a permanent injunction, a plaintiff must demonstrate:

> (1) that it has suffered an irreparable injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction.

*eBay*, 547 U.S. at 391. Irreparable harm is not presumed even where infringement has been found. *See Flexible Lifeline Sys., Inc. v. Precision Lift, Inc.*, 654 F.3d 989, 996 (9th Cir. 2011); *see also Hardy Life, LLC v. Nervous Tattoo, Inc.*, No. C08-3524 PA (CTX), 2008 WL 11338698, at *3 (C.D. Cal. Aug. 4, 2008) (noting that "*eBay* rejected a presumption of irreparable harm when assessing the issuance of a permanent injunction").

Here, all four factors weigh in favor of granting injunctive relief. Williams refused to cease his conduct after being contacted by NOA, Dkt. No. 1 at 20, and at least one of the online shops offering pirated games allegedly affiliated with Williams remained online and in operation up to the filing of this lawsuit, Dkt. No. 25 at 13. When his github was "DMCA'd," Williams modified his operations to continue distributing circumvention software. Dkt. No. 1 at 19. His unabated infringement activities and extensive efforts to evade detection and escape enforcement attempts demonstrates that NOA will suffer irreparable injury absent an injunction. *See Microsoft Corp. v. Coppola*, No. C 06-06701 WHA, 2007 WL 1520964, at *3 (N.D. Cal. May 24, 2007). Under these circumstances, monetary damages would be extremely difficult to determine and would be inadequate to address the wide-ranging harm to NOA. Further, Williams' refusal to participate in this action does not reassure the Court that he has stopped infringing NOA's copyrights or will voluntarily do so in the future. *See Hunter Killer Prods., Inc. v. Zarlish*, No. C19-00168-LEK-KJM, 2020 WL 3980117, at *5 (D. Haw. June 15, 2020), *report and recommendation adopted*, 2020 WL 3977607 (D. Haw. July 14, 2020) (defendant's refusal to participate in the case provided "no reassurance that Defendant . . . will stop making software applications available to the public through his website infringing on Plaintiffs' copyrighted Works"); *Hearst Holdings, Inc. v. Kim*, No. C07-4642-GAF-JWJX, 2008 WL 11336137, at *7 (C.D. Cal. Aug. 17, 2008) (defendants' "failure to respond in any way to this action does not assure the Court that [they] have stopped infringing Plaintiffs' copyrights, which is yet another reason why granting a permanent injunction to enjoin them from further infringement is appropriate"); *Virgin Records Am., Inc. v. Johnson*, 441 F. Supp. 2d 963, 966 (N.D. Ind. 2006) ("Defendant's failure to respond to the complaint likely suggests Defendant does not take seriously the illegality of the infringing activity.").

The balance of hardships also favors NOA because Williams would suffer no injury from an injunction other than refraining from his infringing conduct. *See Eve Nevada, LLC*, 2022 WL

279030, at *9. The injunction does not prohibit Williams from obtaining access to Nintendo's videogames—it simply requires him to do so lawfully. Conversely, NOA will suffer ongoing hardship from the covert and widespread infringement of its copyrights in the absence of an injunction.

Fourth and finally, preventing further copyright infringement undoubtedly serves the public interest. NOA's statutory right to enforce its copyrights outweighs Williams' interest in unlawfully distributing the content for free. Indeed, "[t]he goal of the Copyright Act is 'to promote creativity for the public good.'" *Glacier Films (USA), Inc. v. Turchin*, 896 F.3d 1033, 1041 (9th Cir. 2018) (quoting *Jackson v. Axton*, 25 F.3d 884, 890 (9th Cir. 1994)). Unabated infringement disincentivizes creators' continued exercise of their creativity in developing new works, thereby harming the public.

Considering the foregoing factors, a permanent injunction against Williams is appropriate and warranted. The Court finds that NOA's proposed injunction is appropriately narrowly tailored to prevent specific categories of unlawful conduct established in NOA's complaint.

## V. CONCLUSION

For all of the foregoing reasons, the Court GRANTS NOA's motion for default judgment and a permanent injunction. Dkt. No. 25. Default judgment shall enter in favor of NOA and against Williams, as follows:

(1) NOA is awarded $4,500,000 in statutory damages for copyright infringement pursuant to 17 U.S.C. § 504(c)(2);

(2) Williams and all persons acting under his direction or control (including but not limited to his agents, subsidiaries, representatives and employees) are permanently enjoined from:

(a) continuing to make available to others any online "shops" that he operates or otherwise controls which have offered to the public pirated Nintendo Switch games for download;

(b) taking any steps on Williams' own behalf or assisting others in distributing, advertising, marketing, selling, reselling, uploading, downloading, offering for sale, or otherwise disseminating any software whose use circumvents technological measures that control access to Nintendo's games or consoles (the "Circumvention Software"), any other circumvention technology that violates the Nintendo Switch End User License Agreement or the Nintendo Account User Agreement (collectively, the "EULAs"), or any other software product or service designed to circumvent technological measures that control access to Nintendo's games or consoles;

(c) taking any steps on Williams' own behalf or assisting others in distributing, advertising, marketing, selling, reselling, uploading, downloading, offering for sale, or otherwise disseminating unauthorized copies of Nintendo video games, including but not limited to Nintendo Switch games and the 30 copyrighted Nintendo games listed in footnote 3 above; and

(d) engaging in any further conduct that induces or encourages members of the public to download or obtain the Circumvention Software, download or copy any Nintendo video games, or otherwise breach the EULAs.

To effectuate this injunction, Williams shall immediately disable access to all online "shops" that he operates or otherwise controls which have offered to the public extensive libraries of pirated Nintendo Switch games for download and any social media accounts (including without limitation any Instagram, X, Reddit, and

TikTok accounts), communications platforms (including without limitation any Discord servers or Telegram accounts), e-commerce websites, and any other platforms or vehicles used by Williams to distribute (i) infringing copies of Nintendo Switch games, (ii) the Circumvention Software, or (iii) any other circumvention technology.

Dated this 23rd day of September, 2026.

Lauren King
United States District Judge